Di Dio, Administrator, Appellant, v. BOARD OF TRUSTEES OF THE MILWAUKEE PUBLIC SCHOOL TEACHERS' ANNUITY & RETIREMENT FUND and another, Respondents.

*January 31—February 27, 1968.*

For the appellant there were briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland,* attorneys, and *Robert V. Abendroth* of counsel, all of Milwaukee, and oral argument by *Mr. Abendroth.*

For the respondents there was a brief by *John J. Fleming,* Milwaukee city attorney, *Harry G. Slater,* deputy city attorney, and *Gerald V. Kortsch,* assistant city attorney, for the Board of Trustees of the Milwaukee Public School Teachers' Annuity & Retirement Fund, and by *Murphy, Shapiro & Gorsky* and *Donald E. Murphy,* all of Milwaukee, for Mrs. Clara Freidel Long, and oral argument by *Donald E. Murphy.*

ROBERT W. HANSEN, J. In this case, as in many others, when you define precisely the question asked, you suggest the answer to be given.

Appellant sees the issue presented as: Whether a 1955 beneficiary designation by decedent under the then existing annuity and retirement system is an effective disposition of death benefits under an entirely new and distinct retirement system, enacted in 1957.

Appellant contends that the legislature did not establish another lane of traffic to an existing highway. It created an entirely new and completely separate highway. Those, like Robert E. Freidel, who elected to drive on the new highway left the old behind them. This interpretation leads to suggesting a sharp and complete cut-off between the two routes. It leads to the conclusion that a beneficiary designation under the old plan is voided by the decision to participate in the new plan. The appellant concedes that public school teachers in Wisconsin have a contractual relationship with respect to their rights in a retirement system. (*State Teachers' Retirement Board v. Giessel* (1960), 12 Wis. 2d 5, 106 N. W. 2d 301.) However, it sees Milwaukee teachers, including the decedent,

who elected coverage in the "combined" group as having torn up their old contract and having entered into an entirely new one. Appellant cites cases in other jurisdictions, particularly one in New Jersey (*Meyer v. Board of Trustees of Teachers' Pension & Annuity Fund* (1958), 49 N. J. Super. 255, 139 Atl. 2d 420) where appellate courts held the legislature had intended to abolish an existing retirement system and create an entirely new system in its place. The question before us is: Did the Wisconsin legislature in 1957 intend and effect for those who elected to take the combined coverage under the new option so entirely complete a cut-off between the old and new provisions.

Respondents state the issue presented as: Where a retirement system law is amended by adding a new plan and a member exercises his option to come under the new plan, does the designation of a beneficiary executed under the prior plan remain in effect to pass benefits created under the new plan where the administrative agency charged with the duty of applying the law has accepted such designation of beneficiary.

Respondents see the legislative action in 1957 as adding an employee option, creating two plans as part of one system. The contention here is that the legislature did not wipe out an existing system and establish an entirely new one. It provided two alternative routes to retirement benefits, both part of the same system. This approach sees the employee's election to become a member of the "combined" group as a modification of an existing contract as to contributions and benefits rather than as a tearing up of the old contract and signing a new one. This interpretation is strongly buttressed by the simultaneous enactment of this statutory provision (sec. 38.24 (3) (1), Stats.) "*Nature of contractual rights unchanged.* It is not intended that the enactment of this act (Chapter 78, Laws of 1957), shall extend or impair the nature of any contractual rights of members of the retirement fund."

Both respondent and the trial court find this enactment to be indicative of a legislative intent to modify contributions and benefits of the existing system upon an optional basis rather than to revoke an existing system and to establish something totally new in its place. Relying largely on the above provision for protection of contractual rights, the trial court found that the legislature ". . . with this enactment it merely divided this pension fund into two groups. It did not create a separate and distinct pension program. It divided the fund into separate and combined groups." The trial court proceeded to the conclusion that when Robert Freidel designated his sister as beneficiary and did not, at any time, change this designation, she remained his beneficiary when he continued in the retirement fund as a member of the "combined" group, as she would have if he had elected to continue as a member of the "separate" group.

We agree with the conclusion of the trial judge, finding this interpretation of what the legislature did, and intended to do, in its 1957 enactment as the most reasonable.

The whole legislative history of the relationship of the federal Social Security Act to state and local public employee retirement systems in Wisconsin supports this interpretation. When the Social Security Act became law in 1935, questions of law and policy arose as to its relationship to existing public employee pension plans in the various states. It is the briefest of summaries to state that some favored the abandonment of state and local government employee pension plans in favor of social security coverage. Others, particularly among teachers, firemen and policemen, resisted the substitution of social security benefits for existing staff pension plan provisions. Arguments, pro and con, are immaterial here. Earlier retirement age was an argument advanced for retention of local systems. Portability of benefits, particularly for those moving from state to state, was an

argument advanced in favor of blanket social security coverage. In the arena of the legislative process, there was hammered out a compromise whereby a state or local governmental unit could extend social security coverage to its employees by combining it with existing pension systems, if the members indicated their preference by referendum. The absence of the term "repeal and recreate" in the enacting clause of ch. 78 indicates that the legislature did not intend to repeal and recreate the retirement system but intended only to create a new plan within the system.

Concern for the rights of present members of existing independent retirement systems is clearly expressed in the federal and state enactments related to this coupling of social security coverage with existing pension plan provisions. Title 42 USCA, sec. 418 (d) (2), enacted by the United States Congress in 1954, provides:

"It is declared to be the policy of the Congress in enacting the succeeding paragraphs . . . that the protection afforded employees in positions covered by a retirement system on the date an agreement under this section [*i.e.*, between the Federal Government and the States of Alaska, California, Connecticut, Florida, Georgia, Massachusetts, Minnesota, Nevada, New Mexico, New York, North Dakota, Pennsylvania, Rhode Island, Tennessee, Texas, Vermont, Washington, Wisconsin or Hawaii, or any political subdivision of any such state] . . . will not be impaired as a result of making the agreement so applicable or as a result of legislative enactment in anticipation thereof."

Ch. 78, Laws of 1957, Wisconsin's enabling statute for Title 42, USCA, created sec. 66.99 (3m) providing:

"(3m) For the purposes of sub. (3a) the members of the combined group of a retirement fund created under s. 38.24 constitute a coverage group."

Sec. 38.24 (3) (b) 1, (d) and (h) were created in 1957 to provide:

"(b) *Combined group*. The combined group shall be composed of:

"1. Members who indicate in accordance with this subsection that they desire coverage under an agreement . . . of the federal social security act.

"(d) *Information and forms to be furnished to members*. Not later than May 30, 1957, the secretary shall mail or deliver to each person who is an active member on May 15, 1957 information concerning the contributions, benefits and other features of the 2 groups into which the retirement fund is [now] divided . . . A member who chooses to become a member of the combined group shall thereby elect to become subject to the laws relating to the combined group and the form provided under this paragraph shall contain a statement to that effect.

" . . .

"(h) *Member to indicate choice*. Each member to whom the materials are sent under par. (d) shall indicate whether he desires to be a member of the separate group or the combined group on the form furnished for that purpose. . . ."

Robert Freidel filled out such form and was transferred from the separate group to the combined group. The statute did not require and he was furnished no form on which to redesignate the beneficiary. When he transferred from the separate to the combined group, he modified his contract with the retirement fund as to benefits and contributions. However, he did not, as we see it, destroy the right of the board of trustees of the fund to honor his earlier and unchanged designation of his sister as his beneficiary or his right as a member of the fund to have his designation of beneficiary continue until he changed it. This conclusion, we find, represents the legislative intent when it gave Robert Freidel the right to elect between the combined group and the separate group in the Milwaukee school teachers' annuity and retirement fund. This conclusion, obviously, carries out the intent of the deceased as to who was to receive the death benefit, and certainly pension laws should be liberally con-

strued in favor of the persons intended to be benefited thereby. The trial court decision properly carries out the obvious intent of the legislature and the equally obvious intent of the deceased.

*By the Court.*—Judgment affirmed.