James A. REHRAUER, James D. Prestidge, Glenn W. Schneeberg, Roger L. O'Brien and Glen A. Dickau, Plaintiffs-Appellants,

Cornelius MIRR, Joseph C. Kulakowski, Thomas L. Piorier, George Wickboldt, James Karbouski, Edwin C. Raasch, Donald C. Rode, Daniel A. Zaharias, Lyle A. Lance, Michael R. Horbinski, Sr., Robert L. Singer, Thaddeus J. Golos, Ervin Pieterzak, Walter R. Radke, James H. Radke, Lawrence W. Lee, Thomas A. Davey, Jr., Daniel D. Tetzlaff, Noel E. Nogalski and Donald J. Pluta, Plaintiffs,

v.

CITY OF MILWAUKEE and Milwaukee Employes' Retirement System Annuity and Pension Board, Defendants-Respondents.

Court of Appeals

*No. 00–2090. Submitted on briefs April 4, 2001.—Decided June 26, 2001.*

2001 WI App 151

(Also reported in 631 N.W.2d 644.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Donald Roy Fraker* of *Fraker Law Firm, S.C.,* of Mequon.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Grant F. Langley,* city attorney, and *Ellen H. Tangen,* assistant city attorney, of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. Retired City of Milwaukee firefighters James A. Rehrauer, James D. Prestidge, Glenn W. Schneeberg, Roger L. O'Brien, and Glen A. Dickau[1] (collectively, "the firefighters") appeal from

---

[1] Dickau was not a plaintiff in the underlying action, and the appellate record does not establish whether he had been a City of Milwaukee firefighter.

the circuit court's grant of summary judgment to the City of Milwaukee and Milwaukee Employes' Retirement System Annuity and Pension Board (collectively, "the City"). They contend that the court erred in concluding that: (1) their vested rights in their Duty Disability Retirement Allowances ("DDRA," or "duty disability benefits") were limited to those contractually in place at the time the City of Milwaukee hired them; and (2) the doctrine of issue preclusion foreclosed their action. Because we conclude that the firefighters acquired vested rights in the duty disability benefits that came to be contractually established during the course of their employment, we reverse.

## I. BACKGROUND

¶ 2. The firefighters began their employment with the City of Milwaukee prior to February 8, 1972, and they received duty disability benefits at various times after September 30, 1977.[2] Consequently, the City granted them the limited-term duty disability benefits provided under the contracts that had been in effect at the time they were hired, but denied them the lifetime duty disability benefits that had been established under the subsequent contract in effect for firefighters from February 8, 1972, through September 30, 1977. The firefighters describe the practical impact of tying the benefits to the time of hire:

> Not all disabled police and firefighters lost out on DDRA as a consequence of the City's position, but its interpretation led to the following anomalous results. Those workers who had been hired prior to the lifetime disability contract and had applied for

---

[2] Rehrauer, Schneeberg, and O'Brien were granted DDRA after September 30, 1977. Prestidge never was granted DDRA.

disability before it had ended received lifetime DDRA. Those who had been hired during the period of the lifetime disability contract and had applied for disability after it had ended also received lifetime DDRA. Only those who had been hired prior to the start of that contract but had not applied for disability until after it had ended suffered a diminution of the promised lifetime DDRA benefit. (Also, no disabled police or firefighters hired after the end of the lifetime disability contract were adversely affected, since, thereafter, whenever DDRA entitlements were changed, they invariably were lowered. The 1972 increase in such benefits was unique.)

¶ 3. Thus, in October 1998, the firefighters and the widow of one of their peers, among others, initiated the underlying action seeking declaratory relief.[3] In the circuit court, the parties stipulated that, with respect to their cross-motions for summary judgment, the issues of law were identical to those presented to the same branch of the circuit court in *DeBraska v. City of Milwaukee*, Milwaukee County Circuit Court Case No. 98–CV–006533. They agreed that the only difference between the two cases was that the plaintiffs in

---

[3] Specifically, the plaintiffs in the declaratory judgment action sought a determination of the correct age at which a firefighter's DDRA should be converted to a Service Retirement Allowance (SRA). The appellants explain that the contracts before February 8, 1972, and after September 30, 1977, "provided that a disabled firefighter would be 'converted' to regular retirement status upon reaching a particular age, or a particular age and length of service combination, at which time his/her DDRA would end and be replaced by payments of a Service Retirement Allowance (SRA), a lesser benefit." (For an explanation of the relationship between DDRA and SRA, *see Welter v. City of Milwaukee*, 214 Wis. 2d 485, 488, 571 N.W.2d 459 (Ct. App. 1997).)

*DeBraska* were retired police officers rather than retired firefighters. Additionally, the parties stipulated to the disposition of the case on cross-motions for summary judgment based on: (1) a table listing the plaintiffs and their respective dates of birth, hire, and duty disability retirement; the highest conversion age in effect during their employment; and the dates of conversion to service retirement; and (2) the circuit court filings, both in support of and in opposition to the motions and cross-motions for summary judgment, in *DeBraska*.

¶ 4. Adopting its oral decision in *DeBraska* as dispositive of the cross-motions for summary judgment in the firefighters' case, the circuit court granted summary judgment to the City. Relying on *Welter v. City of Milwaukee*, 214 Wis. 2d 485, 571 N.W.2d 459 (Ct. App. 1997), the circuit court concluded that "the plaintiffs have contractual and vested rights to the mandatory conversion age in effect on the date of their hire or at the date of the grant of a duty disability retirement allowance, whichever is a higher conversion age."

¶ 5. The firefighters contend that the circuit court erred. They maintain that they gained vested contractual rights to receive lifetime duty disability benefits, through the contract in effect from February 8, 1972, through September 30, 1977, and that their claim should not be foreclosed by the doctrine of issue preclusion or by "an erroneous legal conclusion that post-hiring benefits are irrelevant." The firefighters are correct.

## II. DISCUSSION

¶ 6. As we have explained, summary judgment is appropriate to determine whether there are any mate-

rial factual disputes, so that the parties and court may avoid a trial where there is nothing to try. *Kotecki & Radtke, S.C. v. Johnson*, 192 Wis. 2d 429, 436, 531 N.W.2d 606 (Ct. App. 1995). While we apply the same methodology as the circuit court when reviewing summary judgment, *id.*, and while we are assisted by the circuit court's analysis, *Welter*, 214 Wis. 2d at 489, our review is *de novo, id.* If we conclude that the circuit court granted summary judgment based on an incorrect legal determination, we will reverse its grant of summary judgment. *Link v. Gen. Cas. Co. of Wis.*, 185 Wis. 2d 394, 398, 518 N.W.2d 261 (Ct. App. 1994).

¶ 7. The firefighters assert that the contract, in effect between their union and the City from February 8, 1972, through September 30, 1977, promised that any firefighter who became, and remained, disabled as a result of an on-duty injury would receive lifetime disability benefits, thus providing "greater rights with respect to disability pay than did the union contracts in place before or after." Thus, they argue, the circuit court erred in determining that "disabled City of Milwaukee employees need not be given the highest level of DDRA benefits in place during the terms of their employments because the only benefit levels that mattered to them were those that had induced them to sign on as City employees." They contend that the court's analysis is flawed and that its conclusion "flies in the face of common sense and contravenes a clear statement of the Wisconsin Legislature's understanding and intent."

¶ 8. In support of their argument, the firefighters point out that the legislature, after creating Milwaukee's Employees' Retirement System, *see* Laws of 1937, ch. 396, emphasized its intention to strengthen public service in the City of Milwaukee by "establishing the

security" of the system's retirement and death benefits. The legislature declared:

> LEGISLATIVE POLICY. Employes have been attracted to and have remained in the public service in cities of the first class despite the prevailing higher wages in other employments because of the deferred compensation for their services promised to them in the form of retirement annuities and death benefits in the retirement system to which they have been admitted as contributing members. *The purpose of this act is to strengthen the public service in cities of the first class by establishing the security of such retirement and death benefits.*

Laws of 1947, ch. 441, § 30(1) (emphasis added).

¶ 9.   Moreover, and of particular significance to the instant case, the legislature sought to protect such benefits, once granted, from subsequent reduction. The legislature declared, in relevant part:

> (2)  CONTRACTS TO ASSURE BENEFITS. The benefits of members, whether employes in service or retired as beneficiaries, and of beneficiaries of deceased members in the retirement system created by chapter 396, laws of 1937, as amended, shall be assured by benefit contracts as herein provided:
>
> (a)  Every such member and beneficiary shall be deemed to have accepted the provisions of this act and shall thereby have a benefit contract in said retirement system of which he [or she] is such member or beneficiary as of the effective date of this act unless, within a period of 30 days thereafter, he [or she] files with the board administering the system a written notice electing that this act shall not apply to him [or her]. The annuities and all other benefits in the amounts and upon the terms and conditions and in all other respects as provided in the law under which the system was established as such

law is amended and in effect on the effective date of this act shall be obligations of such benefit contract on the part of the city and of the board administering the system and *each member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his [or her] consent.*

Laws of 1947, ch. 441, § 30(2)(a) (emphasis added).[4] And, with specific reference to cities of the first class, the legislature continued:

For the purpose of giving to cities of the first class the largest measure of self-government with respect to pension annuity and retirement systems compatible with the constitution and general law, it is hereby declared to be the legislative policy that all future amendments and alterations to this act are matters of local affair and government and shall not be construed as an enactment of state-wide concern. *Cities of the first class are hereby empowered to amend or alter the provisions of this act . . . provided that no such amendment or alteration shall modify the annuities, benefits or other rights of any persons who are members of the system* prior to the effective date of such amendment or alteration.

Laws of 1947, ch. 441, § 31(1) (emphasis added).[5]

---

[4] The statute also covered "[e]very future entrant who shall become a member of this retirement system after the effective date of this act." Laws of 1947, ch. 441, § 30(2)(c).

[5] To the extent that the firefighters are affected, the provisions of Laws of 1947, ch. 441, §§ 30 and 31(1), were incorporated into the Milwaukee City Charter at § 36–13. On February 8, 1972, the following was added to the Charter as § 36–13–2–e:

¶ 10.  The City argues that, in *Welter*, we limited the contractual vested rights of affected employees to those "in effect when they were hired and became . . . member[s] of the system—no more, no less." Thus, the City maintains, because the firefighters were hired

*No rights, benefits or allowances whatsoever* created under or pursuant to the provisions of the Employes' Retirement Act or as amended heretofore or hereafter, nor creditable, nor prior service, nor credits granted, either recognized or allowed to such member, or retired member or beneficiary, nor any rights or benefits allowed or allowances granted by virtue of any minimum or maximum retirement provisions or requirements, nor any minimum or maximum retirement provisions of this Act *shall in any manner whatsoever, or in any form, either be altered, modified, reduced, changed, cancelled, revoked or impaired, now or hereafter to the disadvantage or loss of such member or retired member or beneficiary as to his [or her] pension rights, payments or retirement allowances, and no action shall be taken nor provision enacted which in any manner diminishes, reduces or denies to such member or retired member or beneficiary any of his or her retirement allowances, benefits or rights derived from or under any section of this act* or rule promulgated by the board as authorized by this act or as heretofore provided. *No application nor* [sic] *interpretation of the provisions of this act* or rule of the Board *shall be* either effected, instituted nor [sic] promulgated retroactively or *applied in such a manner as to such member, retired member or beneficiary so that it results in any form, in the diminution, loss or partial loss or reduction of any credit, benefit or retirement allowance to which such person was or is entitled* because of prior interpretation or application of the provisions of this act or rule whether general or specific. *The protection, safeguarding and the security of the rights, benefits and allowances expressed in this subsection are and shall be deemed fully vested, contractual and binding upon the employer and guaranteed by it.* No act, action or delinquency of a member of this system shall in any manner defeat or prevent him [or her] or his [or her] beneficiary from receiving the full benefits or allowances to which he [or she] was entitled up to the time of the occurrence of such act, action or delinquency and any provision of this Act which is in conflict therewith is deemed superseded and repealed and to be without force and effect.

(Emphases added.)

prior to February 8, 1972, § 36–13–2-e "cannot be applied to modify their annuities, benefits or other rights, which, under *Welter*, are determined as of the date of hire." The City has misread *Welter*.

¶ 11.   In *Welter*, we determined that, pursuant to Laws of 1947, ch. 441, §§ 30(2) and 31, a City of Milwaukee police officer's right to disability pension benefits vests as of the date of hire, not as of the date of disability. *Welter*, 214 Wis. 2d at 494–95. We did not, however, address the distinct issue of the instant case—whether an affected employee gains vested rights in subsequently-negotiated benefits, at the highest level contractually established at any time during the course of active duty. We now conclude that the firefighters gained such rights.

¶ 12.   In 1972, the firefighters agreed to continue their employment under a contract providing vested rights in lifetime duty disability benefits. Under the Laws of 1947, ch. 441, § 30(2), a retirement system member's vested right to disability benefits may not be "diminished or impaired by subsequent legislation *or by any other means* without his [or her] consent." Laws of 1947, ch. 441, § 30(2)(a), (c) (emphasis added). This statutory guarantee is unambiguous; its meaning is clear. *See Welter*, 214 Wis. 2d at 491 ("Sections 30(2) and 31 of Chapter 441 of the Laws of 1947 are not ambiguous; their meaning is plain.").

¶ 13.   In *Welter*, we clarified that "[u]nder §§ 30(2) and 31, retirement-plan benefits in effect when a Milwaukee police officer becomes a member of the retirement system are vested as to that officer *unless the officer agrees to a change.*" *Welter*, 214 Wis. 2d at 491 (emphasis added). Here, when the firefighters' union negotiated a contract enhancing the firefighters' duty disability allowance, the firefighters, through

their bargaining representative(s), "agree[d] to a change"—the increase in those benefits. Thus, starting in 1972, the firefighters gained vested rights in the lifetime duty disability benefits provided under the contract.

¶ 14. The City argues, however, that the firefighters, in relying on Chapter 441 of the Laws of 1947, ignore "the crucial fact" that the relevant statutory provisions operate to secure only the benefits "on the terms and conditions in effect on the date of hire, not to confer new rights to pension benefits." We disagree. We see no authority establishing such limits but, as we will explain, we see substantial authority establishing the firefighters' right to the enhanced benefits.

██

¶ 15. First, as the supreme court has declared, "pension laws should be liberally construed in favor of the persons intended to be benefited thereby." *Di Dio v. Bd. of Trs. of the Milwaukee Pub. Sch. Teachers' Annuity & Ret. Fund*, 38 Wis. 2d 261, 268–69, 156 N.W.2d 418 (1968). Doing so here favors the firefighters.

¶ 16. Second, the firefighters enjoyed contractual protection against potential subsequent reductions of their benefits. Under § 36–13–2–c of the Milwaukee City Charter, they have a "vested right in the . . . benefits in the amounts and on the terms and conditions and in all other respects as provided in the law . . . in effect at the date of commencement of his [or her] membership *and as subsequently amended.*" (Emphasis added.) *See also Welter*, 214 Wis. 2d at 497 ("Receipt of a pension installment payment that is less than that required by contract is a separate breach of that contract.").[6]

---

[6] From 1972 through 1985, the City distributed contract certificates to its employees stating, in part:

¶ 17. Third, if any doubt remained, *Welter* rejected the notion that public employees somehow agree to a reduction in their benefits simply by approving, through their union, a contract that provides less favorable benefits. *Id.* at 495. We declared that the employees should not "be deemed to have consented to the modification of their vested retirement-system rights because the concessions were agreed-to by their unions," and we reiterated that "a union may not bargain away the vested rights of its members without the express consent of those members." *Id.* at 495–96. Here, the City does not argue that the firefighters provided any such "express consent."

¶ 18. And fourth, the legislature, in declaring its policy, recognized not only what would "attract[ ]" individuals to public employment, but also what would help assure that they would "remain[ ]" in such employment. *See* Laws of 1947, ch. 441, § 30(1); *see also* Milwaukee City Charter § 36–13–1; *Roth v. City of Glendale*, 2000 WI 100,

---

It being expressly the intent of this contract that such member shall continue to be fully protected and safeguarded against any diminution, loss or change whatsoever to his [or her] disadvantage as to any right, interest, or benefit *the same having been once granted . . . .*

. . . .

It is further agreed and provided that such right, interest or benefit of such member under said Employes' Retirement Act *once attained or granted* become [sic] and are [sic] fully vested and *cannot be and shall not be either disturbed, impaired, modified or restricted to the detriment of the member.*

(Emphases added.) The record, however, does not establish that the firefighters received such certificates. Nevertheless, § 36–13–2-b of the Milwaukee City Charter clarifies that the benefit contracts described in § 36–13–2 are "in full force and effect whether or not any written or printed evidence thereof shall be so issued."

¶ 27, 237 Wis. 2d 173, 614 N.W.2d 467 ("Employment benefits represent a critical bargaining tool for employers in attracting *and maintaining* personnel," and " '[t]he inducement of a retirement program provides a reciprocal benefit to employer[s] in terms of employee *retention.*' " (Emphases added.)). Therefore, as the firefighters fairly argue:

> No prospective employee led into employment on the strength of the benefits offered by a prospective employer is likely to ignore later changes in the levels of those benefits. Examination of employment conditions does not end upon hiring. A normal employee continues to monitor the perquisites available in the workplace and compare them to similar benefit programs offered elsewhere. The decision to accept employment is followed by a series of decisions to continue employment.

¶ 19. We agree. Any conclusion to the contrary would conflict with the firefighters' statutory and contractual guarantees. Indeed, any conclusion to the contrary could undermine employment stability—to the detriment of public employers and employees alike—by motivating mass departures of employees whenever they fear that contract negotiations could produce less-favorable pension benefits than those provided under their current contract.[7] Thus, it was reasonable and fair for the firefighters to factor in the enhanced benefits as they decided to continue their employment.

---

[7] *See Welter*, 214 Wis. 2d at 492–93, regarding the statewide importance of maintaining " 'an efficient, dependable police force' "; much the same could be said of the importance of maintaining the stability of efficient, dependable fire-fighting forces.

¶ 20. Thus, liberally construing these pension laws as we must, *see Di Dio*, 38 Wis. 2d at 268–69, carefully examining the specific provisions of the applicable statutes and ordinances, accurately applying the principles of *Welter*, and truly understanding the legislature's recognition of the importance of attraction *and retention* of public employees, we conclude that the firefighters gained vested rights in the highest level of duty disability benefits that came to be contractually established during their years of active duty. Accordingly, we must reverse the circuit court's grant of summary judgment to the City and remand for the entry of declaratory judgment in favor of the firefighters.[8]

---

[8] As noted, the firefighters also argue that the circuit court erred in concluding that their action was foreclosed under the doctrine of issue preclusion. The firefighters are correct.

The premise underlying the circuit court's rationale, and the City's argument on appeal, is that *Welter* resolved the issue here, and that the issue here is identical to that presented in *DeBraska v. City of Milwaukee*; Milwaukee County Circuit Court Case No. 98–CV–006533. As we have explained, however, that premise is flawed; *Welter* addressed a distinct issue. Thus, if, as the City asserts, *DeBraska* addressed the issue of the instant case, and even if, as the City further asserts, all other issue preclusion criteria have been satisfied, invocation of the doctrine would be fundamentally unfair simply because it would tie the firefighters to a ruling that is incorrect as a matter of law. *See Paige K.B. v. Steven G.B.*, 226 Wis. 2d 210, 224–25, 594 N.W.2d 370 (1999) (second step in analyzing whether doctrine of issue preclusion applies against litigant who was not party to earlier proceeding involves determination of fundamental fairness).

*By the Court.*—Judgment reversed and cause remanded with directions.