Suzanne STOKER and Wisconsin Federation of Nurses and Health Professionals, Local 5001, AFT, AFL-CIO, Plaintiffs-Respondents,

v.

MILWAUKEE COUNTY, Defendant-Appellant,†

MILWAUKEE COUNTY PENSION BOARD, Defendant-Co-Appellant.†

Court of Appeals

*No. 2012AP2466. Submitted on briefs May 3, 2013.*
*—Decided November 14, 2013.*

2013 WI App 144

(Also reported in 841 N.W.2d 532.)

† Petition for Review granted May 23, 2014.

126

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Alan M. Levy* of *Lindner & Marsack, S.C.*, Milwaukee.

On behalf of the defendant-co-appellant, the cause was submitted on the briefs of *Joseph W. Voiland, David O. Krier, Brittany Lopez, Allison A. Miller* and *Daniel Kelly* of *Reinhart Boerner Van Deuren S.C.*, Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Jeffrey P. Sweetland* of *Hawks Quindel Ehlke & Perry, S.C.*, Milwaukee.

Before Lundsten, Sherman and Kloppenburg, JJ.

¶ 1. SHERMAN, J. This is a class action lawsuit concerning the manner in which the pension of certain members of the Milwaukee County Employees' Retirement System (MCERS) is calculated. Under MCERS, a member's pension is determined by the following formula: the member's final average salary (generally the average of the five highest years' salary) is multi-

plied by the number of years of credited service. That number is in turn multiplied by a percentage multiplier. The dispute in this appeal concerns only the percentage multiplier portion of the formula.

¶ 2. Milwaukee County and the Milwaukee County Pension Board appeal from summary judgment, granting declaratory and injunctive relief to Suzanne Stoker, on her own behalf and as representative of all county employees situated similarly to her, and the Wisconsin Federation of Nurses and Health Professionals, Local 5001, AFT, AFL-CIO. The circuit court determined that a Milwaukee County Ordinance reducing the multiplier for the calculation of Milwaukee County retirement benefits for service performed after January 1, 2012, was invalid as applied to county employees, like Stoker, who had vested rights in the higher multiplier before that date. The court enjoined Milwaukee County and the Pension Board from reducing for Stoker and those similarly situated, the pension multiplier for service performed after that date without prior consent. For reasons explained below, we affirm.

## BACKGROUND

¶ 3. Stoker is an employee of Milwaukee County, having been hired on or about April 13, 1982.[1] As an employee of Milwaukee County, Stoker is a member of the MCERS. Along with all of the members of the class that she represents in this action, Stoker is also a member of Local 5001, which has been the certified collective bargaining representative of certain non-supervisory registered nurses, occupational therapists, music therapists, forensic chemists and other health care professionals.

---

[1] The parties entered into a stipulation of facts for the purpose of the dispositive motions.

¶ 4. MCERS was created by 1937 Wis. Laws, ch. 201.[2] Two amendments to MCERS that are relevant to this action have been enacted by the legislature. 1945 Wis. Laws, ch. 138 provided in relevant part that each member "shall have a similar benefit contract" and a "vested right to such annuities and other benefits" that "shall not be diminished or impaired by subsequent legislation or by any other means" without the member's consent. A member at the effective date of ch. 138 would have such a vested interest in those benefits as they existed on that effective date and all future members would have the same right in the benefits as they existed on the dates that they became members of MCERS.

¶ 5. 1965 Wis. Laws, ch. 405, granted Milwaukee County "home rule" authority over MCERS, which allowed the County to thereafter alter MCERS by ordinance without obtaining the authority to do so through additional State legislation. However, ch. 405 limited the County's power to make changes to MCERS by providing that no change "shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of such retirement system prior to the effective date of any such change." 1965 Wis. Laws, ch. 405, § 2.

¶ 6. At the time Stoker became a Milwaukee County employee, the multiplier for her pension formula was set at 1.5% under Milwaukee County General Ordinance § 201.24(5.1). The multiplier remained unchanged at that percentage until December 31, 2000.

---

[2] 1937 Wis. Laws, ch. 201, which created and established the structure of MCERS, is a non-statutory session law. That is, it does not create or amend any statutory sections. Subsequent legislative changes to MCERS are contained in later non-statutory session laws that directly amend 1937 Wis. Laws, ch. 201.

¶ 7.   Effective January 1, 2001, Milwaukee County General Ordinance § 201.24(5.15)(1)(a) implemented a "recruitment and retention incentive" under which employees hired after January 1, 1982, would acquire an additional 0.5% multiplier for each year of employment after January 1, 2001, and the increased multiplier would apply to prior years of each such employee's service at the rate of eight previous years of employment for each year served after January 1, 2001. As a result, by 2006, well before December 31, 2011, a multiplier of 2.0% (being the original 1.5% plus the additional 0.5%) applied to all of Stoker's creditable service prior to that date.

¶ 8.   In 2011, Local 5001 and Milwaukee County entered into a memorandum of agreement.[3] Under the terms of this agreement, the multiplier was set at 1.6% for all creditable service on or after January 1, 2012. Amounts accrued prior to that date under MCERS were unaffected by this change.

¶ 9.   Neither Stoker, nor any member of the class that she represents has personally consented to the reduction of his or her pension multiplier from 2% to 1.6% for amounts accrued after January 1, 2012.

¶ 10.   In December 2011, Stoker and Local 5001 brought this action seeking a declaratory judgment that Milwaukee County General Ordinance § 201.24(5.1)(2)(f) was invalid and an injunction prohibiting Milwaukee County and the Pension Board from reducing the multiplier for her MCERS account,

---

[3] The agreement was ratified by Local 5001 on May 23, 2011, and by the Pension Board on June 23, 2011. The agreement was signed by Milwaukee County and Local 5001 on August 23, 2011. The Pension Board created Milwaukee County General Ordinance § 201.24(5.1)(2)(f) incorporating the multiplier term of the agreement into MCERS on July 28, 2011.

and the MCERS accounts of those similarly situated, from 2%. Motions for summary judgment were filed by Stoker, Milwaukee County and the Pension Board. The circuit court determined that Stoker and the members of the class had vested rights to the 2% multiplier which could not be reduced through collective bargaining.[4] The court entered summary judgment in favor of Stoker and the class members, wherein the court declared that Milwaukee County General Ordinance § 201.24(5.1)(2)(f) is invalid and prohibited Milwaukee County and the Pension Board from reducing any class member's multiplier from 2% for service performed after January 1, 2012. Milwaukee County and the Pension Board separately appeal.[5]

## DISCUSSION

██

¶ 11. This case comes before us following summary judgment granted upon stipulated facts. Sum-

---

[4] Stoker's complaint included both a contractual and a constitutional claim for the requested relief. The circuit court granted summary judgment on the contractual claim, but denied summary judgment on the constitutional claim based upon the record not being sufficiently developed. The constitutional claim was later voluntarily withdrawn and is not part of this appeal.

[5] As the chronology of events is critical to understanding the issues in this appeal, we offer the following summary timeline:

1937 MCERS created by 1937 Wis. Laws, ch. 201.

1945 Members vested contractual rights created by 1945 Wis. Laws, ch. 138, which could not be subsequently diminished without the member's consent.

1965 Home rule granted by 1965 Wis. Laws, ch. 405, with limitation that no benefit could be diminished or impaired by future change.

1982 Stoker became MCERS member; multiplier at 1.5%.

131

mary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2011–12).[6] We review summary judgment de novo, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶ 6, 306 Wis. 2d 513, 743 N.W.2d 843. The summary judgment methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751.

¶ 12. The sole issue on appeal raised by Milwaukee County is whether it may modify an element of the benefit formula prospectively, while making no change in the formula for service previously rendered and credited. Milwaukee County asserts that it may, contrary to the ruling of the circuit court. The Pension Board raises the same issue, and also questions whether individual consent is required for Milwaukee County to modify future, unaccrued pension benefits for current participants. We address these issues in turn below.

¶ 13. But first, we dispose of a preliminary issue raised by the Pension Board. The Pension Board contends that the court may enjoin the implementation of an ordinance only if the ordinance is determined to be unconstitutional. The Pension Board relies on *State ex rel. Cannon v. Moran*, 111 Wis. 2d 544, 553, 331 N.W.2d 369 (1983); however, *Cannon* addressed a challenge to the constitutionality of a statute, whereas here we address an ordinance. *See id.* The supreme court stated

2001    Multiplier became 2% for future service and phased in for past service.

2012    Multiplier reduced for future service to 1.6%.

[6] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

in *Cannon* that "[a]ll laws are presumed to be constitutional. In order to overcome this presumption, the plaintiffs must prove that [the statute at issue] is unconstitutional beyond a reasonable doubt." *Id.* at 552–53. *Cannon* does not support the Pension Board's claim that the validity of an ordinance can be challenged only on the grounds of unconstitutionality.[7]

■

¶ 14.  While acts of the State legislature are clothed with constitutional authority, *see* Wis. Const. art. IV, § 32, county ordinances have no such constitutional underpinning. County powers are established by statute and counties are "bod[ies] corporate." Wis. Stat. § 59.01. Counties, therefore, have only those powers granted by legislation. While the legislature has granted counties a measure of home rule, that home rule is strictly a legislative creation. *See* Wis. Stat. § 59.03.[8]

¶ 15.  The issues in this case concern whether the County exercised authority specifically granted to it by 1965 Wis. Laws, ch. 405, in accordance with the limitations imposed upon it by that law. Although there was a constitutional challenge before the circuit court, that issue was withdrawn and is not before us. Therefore, the constitutionality of the county ordinance held invalid by the circuit court is not an issue before us and will not be discussed further.

---

[7] The County also cites *Wisconsin Prof'l Police Ass'n, Inc. v. Lightbourn*, 2001 WI 59, ¶ 64, 243 Wis. 2d 512, 627 N.W.2d 807. This case likewise concerns the validity of a legislative enactment and is no more on point than *Cannon. State ex rel. Cannon v. Moran*, 111 Wis. 2d 544, 553, 331 N.W.2d 369 (1983).

[8] Contrast this with the powers of cities and villages, which are granted home rule power by the constitution. Wis. Const. art. XI, § 3.

*a. The Multiplier may not be*
*Reduced Prospectively for this Class*

■

¶ 16.   The primary issue in this appeal is whether Milwaukee County may alter the formula multiplier in a manner that is entirely prospective and has no effect whatsoever upon the pension benefits accrued prior to such change. In order to resolve this issue, we interpret the legislative enactments that created MCERS and under which MCERS operates.[9]

■

¶ 17.   On appeal, statutory construction is a question of law subject to de novo review. *State v. Cole,* 2000 WI App 52, ¶ 3, 233 Wis. 2d 577, 608 N.W.2d 432. Statutory construction begins with the statute's text; we give the text its common ordinary, and accepted meaning, except that we give technical or specially defined words their technical or special definitions. *State v. Warbelton,* 2008 WI App 42, ¶ 13, 308 Wis. 2d 459, 747 N.W.2d 717. We interpret statutory language in the context within which it is used, " 'not in isolation but as part of a whole; in relation to the language of surrounding or closely related statutes; and reasonably, to avoid absurd or unreasonable results.' " *Id.* (quoted source omitted). Further, "when engaging in statutory interpretation, we are assisted by prior decisions that have examined the relevant statutes." *State v. Soto,* 2012 WI 93, ¶ 20, 343 Wis. 2d 43, 817 N.W.2d 848 (citation omitted). Stare decisis applies to such prior interpretations. *See State v. Ziegler,* 2012 WI 73, ¶ 114, 342 Wis. 2d 256, 816 N.W.2d 238.

---

[9] For convenience, we will refer to this as statutory construction, in spite of the fact that these laws are not codified into the statutes.

¶ 18.   As described more fully in ¶¶ 4 and 5 above, Milwaukee County's pension system was established by legislative enactment in 1937 and all changes to the original legislation were made by additional legislative enactment until 1965. *See* 1937 Wis. Laws, ch. 20, and 1945 Wis. Laws, ch. 138. Milwaukee County derived its authority to alter the terms of the pension system by virtue of 1965 Wis. Laws, ch. 405, § 2. This act "grant[s] supervisory authority" over MCERS to Milwaukee County, declares the future operation of the system to be a matter of local and not statewide concern,[10] and empowers the County through "county ordinance, to make any changes in such retirement system which hereafter may be deemed necessary or desirable for the continued operation of such retirement system." 1965 Wis. Laws, ch. 405, § 2.

¶ 19.   However, the grant of home rule in 1965 Wis. Laws, ch. 405 is not unlimited. 1965 Wis. Laws, ch. 405 itself includes two provisions that set limits on this legislatively granted power. First, ch. 405 creates a pension study commission to review any proposed changes to the system and report to the county board. *Id.* Second and more directly relevant to our purpose, ch. 405 contains the following language referring to changes to the system by the county board:    "but no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of such retirement system prior to the effective date of any such change." 1965 Wis. Laws, ch. 405, § 2.

---

[10] *See* Wis. Stat. § 59.03(1) ("**Administrative home rule**. Every county may exercise any organizational or administrative power, subject only to the constitution and to any enactment of the legislature which is of statewide concern and which uniformly affects every county.").

¶ 20. Further, it is clear from the terms of the home rule authority granted in 1965 Wis. Laws, ch. 405, that the legislatively created system remains unchanged except to the extent that the county board, by ordinance, alters it. *Id.* ("[B]y county ordinance, to make any changes in such retirement system which hereafter may be deemed necessary or desirable for the continued operation of such retirement system.")[11] Thus, except to the extent altered by ordinance, the terms of the prior legislative enactments described in ¶¶ 4 and 5 above, remain in full force and effect.

¶ 21. It is undisputed that the plain language of the home rule legislation discussed in ¶¶ 18 and 19 above grants Milwaukee County the power to alter MCERS as long as any such change does not diminish the annuities, benefits or rights of any person who is a member of MCERS prior to the effective date of the change. Thus, the issue before this court is whether the decrease in the pension multiplier from 2% to 1.6%,[12] effective prospectively on January 1, 2012, "operate[s] to diminish or impair the annuities, benefits or other

---

[11] *See* Milwaukee County General Ordinance, ch. 201.24, § 1: "The system created hereunder . . . shall be a continuation of the retirement system originally effective on January 1, 1938, as amended from time to time thereafter."

[12] The Pension Board argues that the multiplier was never 2%, but rather a 1.5% pension multiplier and a 0.5% bonus. However, they never explain, nor provide any authority for, why this matters. They claim that the bonus is "unvested," but do not provide any authority for why this is the case, as it is part of the calculation of benefits under the pension plan. They also do not explain why it might be considered unilateral, compared to simply raising the multiplier itself. Generally, this court does not consider conclusory assertions and undeveloped arguments, and we do not do so now. *See Associates Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, ¶ 4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56.

rights" of a member of MCERS prior to the change. *See* 1965 Wis. Laws, ch. 405, § 2.

¶ 22.   This court has addressed similar issues with respect to the City of Milwaukee benefit system. The City of Milwaukee's pension plan is also governed by legislation.[13] Like 1945 Wis. Laws, ch. 138, the City of Milwaukee's enabling legislation provides that each member shall "have a benefit contract" and "each member . . . shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without [the member's] consent." 1947 Wis. Laws, ch. 441, § 30(2)(a).[14] Likewise, as with Milwaukee County, the City of Milwaukee's home rule is limited such that no change may "modify the annuities, benefits or other rights of any persons who are members of the system prior to the effective date of any such [change]." 1947 Wis. Laws, ch. 441, § 31(1).[15] We interpreted these provisions in two cases.

¶ 23.   *Welter v. City of Milwaukee,* 214 Wis. 2d 485, 489–91, 571 N.W.2d 459 (Ct. App. 1997), concerned the age at which duty disability pensions became standard retirement pensions. Duty disability pensions provided a larger annuity than standard retirement pensions. The retirement plan provided for the duty disability pension to cease at a certain age and for the member to

---

[13] Although cities and villages are granted home rule powers by Wis. Const. art. XI, § 3(1), under that provision the legislature retains the authority to make "such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. The method of such determination shall be prescribed by the legislature."

[14] Compare the language applicable to MCERS in ¶ 4 above.

[15] Compare the language applicable to MCERS in ¶ 5 above.

receive standard retirement benefits from that time forward. The particular age at which the conversion took place was changed by the city from time to time. *Id.* at 488–91.

¶ 24. In *Welter*, we held that Milwaukee city police officers who were eligible for duty disability pensions could not be converted to the less remunerative service retirement pensions at an age lower than the conversion age that was in effect when they were hired. We based this holding on a plain-meaning reading of the enabling and home rule legislation. *Id.* at 491. Under those provisions which, as set forth in ¶¶ 4 and 5 and ¶¶ 18 to 22 above, are virtually identical to those applicable to MCERS in this case, "retirement[] plan benefits in effect when a Milwaukee police officer becomes a member of the retirement system are vested as to that officer unless the officer agrees to a change." *Id.*

¶ 25. The conversion age for duty disability benefits was also the subject of *Rehrauer v. City of Milwaukee*, 2001 WI App 151, ¶ 11, 246 Wis. 2d 863, 631 N.W.2d 644. In *Rehrauer*, the city's contract with firefighters from February 8, 1972, through September 30, 1977, provided for lifetime duty disability benefits with no conversion age. *Id.*, ¶ 2. In the course of rejecting the city's attempt to limit a benefit by imposing the conversion age at hiring on members hired prior to February 8, 1972, we held that "an affected employee gains vested rights in subsequently[]negotiated benefits, at the highest level contractually established at any time during the course of active duty." *Id.*, ¶ 11.

¶ 26. The circuit court found *Welter* and *Rehrauer* directly applicable to the issue before us, and the respondents rely upon these cases on appeal. We agree. Changes in the conversion date for duty disability

pensions have a direct effect on the amount of the annuity ultimately received by the city officers, just as changes in the pension multiplier do for MCERS members.

¶ 27.  As we have shown above, both *Welter* and *Rehrauer* interpret statutory language that is virtually identical to the statutory language that applies to MCERS. As we discussed in ¶ 17 above, we are bound by those prior court interpretations. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (the court of appeals "must speak with a unified voice" and may not overrule, modify or withdraw language from its prior published decisions).

¶ 28.  Even if we were not so bound, it is plain that the same logic would dictate the same result. The multiplier is one of the factors that determines the amount of an employee's pension. Just as a change in the date at which a duty disability pension is converted to a retirement pension under the City's plan decreased the amount of a City pension, a reduction in the multiplier decreases the amount which a County employee would receive under MCERS. Therefore, such a change "operate[s] to diminish . . . the annuities [or] benefits" of MCERS members as they existed "prior to the effective date of [the] change," in violation of the home rule authority granted by 1965 Wis. Laws, ch. 405.[16]

¶ 29.  The Pension Board asserts in a footnote[17] that *Welter* and *Rehrauer* can be distinguished because

---

[16] *See* ¶ 19 above.

[17] The Pension Board's appellate brief-in-chief only mentions *Welter* and *Rehrauer* in a footnote, as noted in the text, though both are shown in the table of cases elsewhere. In the paper copy of the brief, the table of cases indicates that both are found on page 38. In the electronically filed copy of the brief, both are shown as appearing *passim*. Other page citations in the

the duty disability benefit vests at hire, but "pension benefits do not vest at hire because eligibility requirements must be met before those benefits became absolute." The Pension Board cites no authority for the contention that MCERS pension benefits do not also vest at hire, and the plain language of 1945 Wis. Laws, ch. 138 plainly states that pension benefits vest at hiring.[18] Moreover, the Pension Board does not explain why duty disability benefits and pensions are different with respect to "eligibility requirements." At the time of hire, no employee is eligible for either a duty disability benefit or a pension benefit. In both situations the employee must meet further eligibility requirements.

¶ 30. Milwaukee County argues that several other of our cases and those of the supreme court conflict with *Welter* and *Rehrauer*, and it argues that we should follow those cases instead. Each of those cases is listed, discussed and distinguished below.

¶ 31. The first of the cases cited by the County that we review is *Wisconsin Prof'l Police Ass'n, Inc. v. Lightbourn*, 2001 WI 59, 243 Wis. 2d 512, 627 N.W.2d 807. *Lightbourn* concerns a major change to the Wisconsin Retirement System enacted by the legislature in 1999. *Id.*, ¶ 37–39. The Wisconsin Retirement System is a State entity, rather than a county or city agency. Its terms are provided by statute, just as most of MCERS and the city's programs are, but unlike the provisions in those programs, the Wisconsin Retirement System statute contains a specific provision that permits changes to the rights and benefits of participants as long as those changes are prospective:

---

table of cases are similarly inaccurate. Counsel is admonished to take better care that the cross-references and citations in the brief are accurate.

[18] *See* ¶ 4 above.

> The right of the state to amend or repeal, by enactment of statutory changes, all or any part of this chapter at any time, however, is reserved by the state and there shall be no right to further accrual of benefits nor to future exercise of rights for service rendered after the effective date of any amendment or repeal deleting the statutory authorization for the benefits or rights.

*Id.*, ¶ 108 (citing Wis. Stat. § 40.19(1)). The statutes governing MCERS and the city contain no such provision. Consequently, *Lightbourn*, which primarily involves the transfer of large funds of money in any event and not the calculation of individual benefits, does not in any manner apply to this case.

¶ 32. The other supreme court case relied upon by Milwaukee County is *Loth v. City of Milwaukee*, 2008 WI 129, 315 Wis. 2d 35, 758 N.W.2d 766. *Loth* involved a city employee's entitlement to the particular terms of the health insurance plan offered by the city. *Id.*, ¶ 2. At the time that the employee attained fifteen years of service under the plan, the plan provided for premium free health insurance after retirement for employees between the ages of sixty and sixty-five who had at least fifteen years of service. *Id.* However, when the employee attained the age of sixty and retired, the plan then in effect required the employee to pay premiums to obtain the insurance. *See id.* The employee sued to obtain the benefits that he claimed had vested when he completed his fifteen years of service—premium free health insurance. *Id.*, ¶ 3.

¶ 33. In holding that the employee's entitlement did not vest until he met all of the requirements (including both his age and being retired), and that the employee had to accept the plan offered at his retirement, the supreme court emphasized that the health plan was a unilateral offering of the city and not a

141

contracted benefit. *See id.*, ¶ 39. In the present case, the enabling statutes of both the city and MCERS specifically provide that there is a contract between the employee and the employer regarding the pension plan. *See* ¶ 22 above. *Loth*, therefore, is also not applicable to this appeal.[19]

¶ 34. Appellants have also cited several of our cases. We will review them briefly. *Champine v. Milwaukee County*, 2005 WI App 75, ¶ 1, 280 Wis. 2d 603, 696 N.W.2d 245, involved accrued sick leave and did not discuss any of the statutes or issues presented on appeal here and is, thus, unhelpful. *Bilda v. Milwaukee County*, 2006 WI App 159, 295 Wis. 2d 673, 722 N.W.2d 116, involves MCERS; however, the issues discussed in that opinion were different from the issues raised in the present appeal. *Bilda* involved an increase in benefits to some, but not all of the members. *Id.*, ¶ 1. The plaintiff class in *Bilda* claimed that there had been an unconstitutional taking because the reserves remaining would be depleted by the increased benefits. *Id.* In ruling that there was no taking, nor other violation of the pension rules or procedures, we did not address any issues relevant to the present case. The opinion covers a number of essentially procedural issues, such as whether the changes were properly submitted to and reviewed by the pension review commission. *See id.*, ¶¶ 8–12. None of the issues discussed in *Bilda* have any applicability to the issues in this case. Finally, *Dunn v. Milwaukee Cnty.*, 2005 WI App 27, 279 Wis. 2d 370,

---

[19] Our recent case in *Wisconsin Fed'n of Nurses & Health Prof'l v. Milwaukee Cnty.*, 2013 WI App 134, 351 Wis. 2d 421, 839 N.W.2d 869, which also involves a health insurance benefit (entitlement to county paid Medicare Part B premiums), is based entirely on *Loth* and is, consequently, likewise inapplicable.

142

693 N.W.2d 82, concerns a rescinded wage increase and bears no relationship to the issues in this appeal.

¶ 35.   None of the cases cited by Milwaukee County and the Pension Board mention *Welter* or *Rehrauer.* Moreover, none of those cases overruled, modified or withdrew language from *Welter* or *Rehrauer,* either directly or by implication. *See Cook,* 208 Wis. 2d at 189. *Welter* and *Rehrauer* remain binding upon us. *Id.*

¶ 36.   In summary, *Welter* and *Rehrauer* applied the plain meaning of language virtually identical to that applicable to MCERS and concluded that employees under the City of Milwaukee's pension plan have a vested contractual interest in the terms of their plan at the highest level obtained during the course of their employment. As the statutory language is nearly identical, we are bound to interpret the language before us in the same manner. Thus, we affirm the circuit court's decision that Stoker and those similarly situated have a vested contractual interest in the percent multiplier at the highest level obtained during the course of their employment—in Stoker's case, two percent. This percentage multiplier cannot be decreased without the consent of the employee.

### b. Consent Must be Individual and Not by Collective Bargaining

██

¶ 37.   The Pension Board argues that the circuit court erred by failing to recognize that Local 5001 and Milwaukee County engaged in collective bargaining and that the provisions of the pension plan are a mandatory subject of bargaining. The Pension Board further argues that if it is required to bargain individually with

143

each member, it would become a "one-way street" in which pensions could only go up, but never down. We disagree on both counts.

¶ 38. As to the ability to consent on behalf of the employee through collective bargaining, that issue has already been decided by this court. In *Welter*, we held:

> The City's argument that the officers should be deemed to have consented to the modification of their vested retirement-system rights because the concessions were agreed-to by their unions ignores that a union may not bargain away the vested rights of its members without the express consent of those members.

*Welter*, 214 Wis. 2d at 495. As noted above, we are bound by *Welter*.

¶ 39. The second argument, the Pension Board's complaint that under Stoker's view, pension benefits could never be adjusted downward, is a red herring. Pension benefits can be lowered for anyone who is not vested, meaning, for example, those who have not yet been hired. Employees who enter the plan under the provisions at issue in this case would be vested at 1.6%. It is only those already vested at 2% who will retain that multiplier.

¶ 40. Accordingly, we reject the Pension Board's argument.

## CONCLUSION

¶ 41. For the reasons discussed above, we affirm.
*By the Court.*—Judgment affirmed.