# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2466 |
| COMPLETE TITLE: | Suzanne Stoker and Wisconsin Federation of Nurses and Health Professionals , Local 5001, AFT, AFL-CIO, Plaintiffs-Respondents, v. Milwaukee County, Defendant-Appellant-Petitioner, Milwaukee County Pension Board, Defendant-Co-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 352 Wis. 2d 125, 841 N.W.2d 532)
(Ct. App. 2013 – Published)
PDC No.: 2013 WI App 144

| | |
|---|---|
| OPINION FILED: | December 19, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 1, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | William S. Pocan |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | BRADLEY, J., ABRAHAMSON, C.J., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *Alan M. Levy* and *Lindner & Marsack, S.C.*, Milwaukee, and oral argument by *Alan M. Levy*.

For the defendant-co-appellant-petitioner, there were briefs by *Beth Ermatinger Hanan* and *Gass Weber Mullins LLC*, Milwaukee, and oral argument by *Beth Ermatinger Hanan*.

For the plaintiffs-respondents, there was a brief by *Jeffrey P. Sweetland* and *Hawks Quindel, S.C.*, Milwaukee. Oral argument by *Jeffrey P. Sweetland*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2012AP2466
(L.C. No.  11CV18550)

STATE OF WISCONSIN                    :        IN SUPREME COURT

Suzanne Stoker and Wisconsin Federation of
Nurses and Health Professionals, Local 5001,
AFT, AFL-CIO,

       Plaintiffs-Respondents,

       v.

Milwaukee County,

       Defendant-Appellant-Petitioner,

Milwaukee County Pension Board,

       Defendant-Co-Appellant-Petitioner.

**FILED**

**DEC 19, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals.  *Reversed and remanded.*

¶1   ANNETTE KINGSLAND ZIEGLER, J.   This is a review of a published decision of the court of appeals[1] affirming the Milwaukee County Circuit Court's[2] order granting summary judgment

---

[1] Stoker v. Milwaukee Cnty., 2013 WI App 144, 352 Wis. 2d 125, 841 N.W.2d 532.

[2] The Honorable William S. Pocan presided.

and declarative and injunctive relief to Suzanne Stoker ("Stoker")[3] and her labor union, the Wisconsin Federation of Nurses and Health Professionals, Local 5001, AFT, AFL-CIO ("the Federation"). The suit was filed against the respondents, Milwaukee County and the Milwaukee County Pension Board ("the Pension Board"). We reverse and remand this matter to the circuit court to dismiss the complaint.

¶2 Milwaukee County calculates pension payments for its retired employees by multiplying a retiree's final average salary[4] by a certain percentage known as a multiplier, and the resulting number is then multiplied by the retiree's total years of county service. When Stoker's county service began, a 1.5% multiplier applied to her service. In 2000 Milwaukee County

___

[3] Stoker filed this suit on behalf of all similarly situated Milwaukee County employees. References to Stoker will refer to this class of employees unless the context clearly indicates otherwise.

[4] Milwaukee County, Wis. General Ordinance ("M.C.G.O.") § 201.24(2.8) (2000) provides in relevant part:

Final average salary for a member whose continuous membership began after January 1, 1982, means the average annual earnable compensation for the five (5) consecutive years of service during which the member's earnable compensation was the highest, or, if he should have less than five (5) years of service, then his average annual earnable compensation during such period of service. However, when a member is employed by the state but paid partly by the county, his final average salary with respect to any period of employment solely by the county shall be the average earnable compensation for the three (3) or five (5) consecutive years respectively of such service during which his earnable compensation was the highest.

2

passed an ordinance that increased the multiplier from 1.5% to 2% for service rendered on and after January 1, 2001. Milwaukee County, Wis. General Ordinance ("M.C.G.O.") § 201.24(5.15)(1)(a) (2000).[5] In 2011, consistent with the terms of a collective bargaining agreement with the Federation, Milwaukee County passed an ordinance that reduced the multiplier from 2% to 1.6% for all county service performed on and after January 1, 2012, the effective date of the ordinance. M.C.G.O. § 201.24(5.1)(2)(f) (2011). The 2% multiplier continued to apply to service rendered by Stoker from 2001 through 2011.

¶3 Stoker argues that this reduction of the multiplier is a breach of contract because she had a vested right to have the 2% multiplier apply to her post-2011 county service and because she did not personally consent to the reduction. Milwaukee County and the Pension Board argue that the reduction is authorized because Stoker had no vested right to have the 2% multiplier apply to her post-2011 county service. The Pension Board further argues that even if she had such a right, the Federation lawfully consented to the reduction on Stoker's behalf by ratifying the collective bargaining agreement that agreed to reduce the multiplier from 2% to 1.6% for post-2011 service.

---

[5] Technically, this ordinance provided a 0.5% multiplier in addition to the 1.5% multiplier that applied under M.C.G.O. § 201.24(5.1). Thus, these two ordinances combined provided a 2% multiplier.

¶4 We conclude that Milwaukee County did not breach the contract with Stoker when it amended the pension multiplier from 2% to 1.6%. The amendment did not breach Stoker's contractual right to retirement system benefits earned and vested because it had prospective-only application to future service credits not yet earned, specifically, on and after January 1, 2012. We conclude that the legislature preserved Stoker's rights and benefits already accrued but also gave Milwaukee County home rule authority with the flexibility to enact such prospective-only changes. We conclude that Stoker does not have a vested right to have the 2% multiplier apply to her then-unearned post-2011 service. In other words, Milwaukee County could so amend the formula and apply it prospectively because that prospective application does not "diminish or impair" benefits accrued from service credits already earned. Because we conclude that Milwaukee County did have the ability to make these prospective-only reductions of the multiplier without Stoker's personal consent, we need not address whether the Federation lawfully consented, on Stoker's behalf, to the reduction.

## I. FACTUAL BACKGROUND

¶5 The relevant facts are not in dispute. In 1937 the legislature required counties with populations of 500,000 or more to develop retirement systems for their employees. Ch. 201, Laws of 1937.[6] Pursuant to this law, the Milwaukee County

---

[6] Section 1 of ch. 201, Laws of 1937 provided:

(continued)

Employees' Retirement System ("MCERS") was created on January 1, 1938. On May 14, 1945, the legislature required employee benefits under MCERS to "be assured by benefit contracts." Ch. 138, Laws of 1945.[7] The legislature also provided that "each

---

RETIREMENT SYSTEM IN POPULOUS COUNTIES; DEFINITIONS. In each county having a population of five hundred thousand or more a retirement system shall be established and maintained for the payment of benefits to the employes of such county and to the widows and children of such employes, except employes who are contributory to, participants in, or beneficiaries of a pension fund in operation in the state, or any municipal subdivision thereof. The funds of the retirement system shall be derived, administered and disbursed in accordance with the provisions of this act. Except where the context plainly requires a different meaning, the following words and phrases shall have the following meanings: . . . .

[7] Chapter 138, Laws of 1945, provided in pertinent part:

Chapter 201, Laws of 1937, section 13a is created to read:

(Chapter 201, Laws of 1937) Section 13a (1) LEGISLATIVE POLICY. Employes have been attracted to and have remained in the public service in counties of more than 500,000 population despite the prevailing higher wages in other employments because of the deferred compensation for their services promised to them in the form of retirement annuities and death benefits in the retirement system to which they have been admitted as contributing members. The purpose of this act is to strengthen the public service in the most populous counties of the state by establishing the security of such retirement and death benefits.

(2) CONTRACTS TO ASSURE BENEFITS. The benefits of members, whether employes in service or retired as beneficiaries, and of beneficiaries of deceased members in the retirement system created by chapter

(continued)

[MCERS] member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent." Id. The legislature further provided that each MCERS member has a

201, laws of 1937, as amended, shall be assured by benefit contracts as herein provided:

(a) Every such member and beneficiary shall be deemed to have accepted the provisions of this act and shall thereby have a benefit contract in said retirement system of which he is such member or beneficiary as of the effective date of this act unless, within a period of 30 days thereafter, he files with the board administering the system a written notice electing that this act shall not apply to him. The annuities and all other benefits in the amounts and upon the terms and conditions and in all other respects as provided in the law under which the system was established as such law is amended and in effect on the effective date of this act shall be obligations of such benefit contract on the part of the county and of the board administering the system and each member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent.

. . .

(c) Every future entrant who shall become a member of this retirement system [MCERS] after the effective date of this act shall have a similar benefit contract and vested right in the annuities and all other benefits in the amounts and on the terms and conditions and in all other respects as provided in the law under which the retirement system was established as such law shall have been amended and be in effect at the date of commencement of his membership [in MCERS].

"vested right in the annuities and all other benefits in the amounts and on the terms and conditions and in all other respects as provided in the law under which [MCERS] was established as such law shall have been amended and be in effect at the date of commencement of his membership [in MCERS]." Id.

¶6 In 1957 the legislature provided that a member of MCERS has a "vested right . . . to all increases in benefits covered by amendments subsequent to the date his membership [in MCERS] is effective." § 6, ch. 326, Laws of 1957.

¶7 In 1965 the legislature granted "home rule" authority to Milwaukee County over MCERS. § 1, ch. 405, Laws of 1965.[8]

---

[8] Section 1 of ch. 405, Laws of 1965 provided in relevant part:

Chapter 155, laws of 1937, section 59.137 is created to read:

(Chapter 155, laws of 1937) 59.137 PENSION STUDY COMMISSION. (1) For the purpose of best protecting the employes subject to this act by granting supervisory authority over each benefit fund created hereunder to the governmental unit most involved therewith, it is declared to be the legislative policy that the future operation of each such benefit fund is a matter of local affair and government and shall not be construed to be a matter of state-wide concern. Each county which is required to establish and maintain a benefit fund pursuant to this act is hereby empowered by county ordinance, to make any changes in such benefit fund which hereafter may be deemed necessary or desirable for the continued operation of such benefit fund, but no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of such benefit fund prior to the effective date of any such change.

7

This session law provided that "the future operation of each [county] benefit fund is a matter of local affair and government and shall not be construed to be a matter of state-wide concern." Id. This law empowered Milwaukee County "to make any changes in [its employee] benefit fund which hereafter may be deemed necessary or desirable for the continued operation of [MCERS]." Id. However, "no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of [MCERS] prior to the effective date of any such change." Id.

¶8 On or about December 17, 1981, Milwaukee County passed an ordinance that applied a 1.5% pension benefit multiplier to county service performed by an employee whose employment with the County began after January 1, 1982. M.C.G.O. § 201.24(5.1) (1981).[9] Thus, under this ordinance, the pension payments for an employee whose employment with the County began after January 1, 1982, were calculated by multiplying 1.5% by the employee's final average salary, and the resulting number was multiplied by the employee's total years of service with Milwaukee County. Id.

---

[9] This ordinance provided in relevant part: "A [MCERS] member . . . other than a deputy sheriff or elected official, whose continuous membership began after January 1, 1982, who meets the requirements for a normal pension shall receive an amount equal to one and one-half (1 1/2) percent of his final average salary multiplied by the number of his years of service . . . ."

8

¶9 On or about April 13, 1982, Stoker began employment with Milwaukee County and thereby became a member of MCERS. Stoker was a Milwaukee County employee and MCERS member continuously since then and still was both when this lawsuit was filed.

¶10 On or about November 2, 2000, Milwaukee County increased the pension multiplier to 2% for county employees, effective January 1, 2001. M.C.G.O. § 201.24(5.15) (2000). This 2% multiplier applied to "all pension service credit earned on and after January 1, 2001." Id. This 2% multiplier also applied retroactively to eight years of service prior to January 1, 2001, for each year of service performed after that date.

¶11 In approximately May 2011, the Federation and Milwaukee County negotiated the terms of a collective bargaining agreement for January 1, 2012, through December 1, 2012. Under the terms of the collective bargaining agreement, a pension multiplier of 1.6% would apply to "all pension service credit earned on and after January 1, 2012." On or about May 23, 2011, the Federation ratified the collective bargaining agreement. On or about June 23, 2011, Milwaukee County approved the collective bargaining agreement. On or about July 28, 2011, Milwaukee County implemented the collective bargaining agreement by adopting an ordinance, which provided that a 1.6% pension multiplier would apply to "service . . . rendered on and after January 1, 2012." M.C.G.O. § 201.24(5.1)(2)(f) (2011). This ordinance is the subject of this lawsuit.

9

¶12 By virtue of the ordinance adopted in 2000, the 2% multiplier applied to all of Stoker's county service through December 31, 2011. The ordinance at issue changed the multiplier to 1.6% only with respect to Stoker's future, unearned service rendered on and after January 1, 2012. To be clear, the ordinance at issue did not affect the 2% multiplier that applied to Stoker's vested retirement benefits earned through December 31, 2011.

## II.  PROCEDURAL POSTURE

¶13 On December 16, 2011, Stoker and the Federation filed suit in circuit court against Milwaukee County and the Pension Board. Stoker sought relief declaring that the 2011 ordinance that reduced the pension multiplier from 2% to 1.6% with respect to post-2011 county service is invalid. Stoker also sought injunctive relief requiring Milwaukee County and the Pension Board to apply the 2% multiplier to Stoker's county service performed on and after January 1, 2012, the effective date of the ordinance. Stoker argued that the 2011 ordinance was a breach of contract.[10] Stoker, Milwaukee County, and the Pension Board filed motions for summary judgment.

¶14 On July 11, 2012, the circuit court granted Stoker's motion for summary judgment. The circuit court reasoned that,

---

[10] Stoker also argued that the 2011 ordinance was an impairment of contract and an uncompensated taking of property in violation of Article I, Sections 12 and 13 of the Wisconsin Constitution. Stoker later abandoned these arguments, which are not before this court.

under ch. 138 of the Laws of 1945, Stoker had a vested contractual right to retirement benefits since her employment with Milwaukee County began. According to the circuit court, this right includes the 2% multiplier.

¶15 Milwaukee County and the Pension Board appealed. On November 14, 2013, the court of appeals affirmed.

### III. STANDARD OF REVIEW

¶16 We independently review whether the circuit court correctly granted summary judgment to Stoker. *Tatera v. FMC Corp.*, 2010 WI 90, ¶15, 328 Wis. 2d 320, 786 N.W.2d 810 (citing *Racine Cnty. v. Oracular Milwaukee, Inc.*, 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88). Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2) (2011-12).[11]

¶17 This case requires us to interpret county ordinances and session laws. The rules for statutory interpretation apply to our interpretation of an ordinance. *Marris v. City of Cedarburg*, 176 Wis. 2d 14, 32, 498 N.W.2d 842 (1993) (citing *Cnty. of Columbia v. Bylewski*, 94 Wis. 2d 153, 169 n.7, 288 N.W.2d 129 (1980)).

---

[11] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

¶18 "Statutory interpretation is a question of law that this court reviews de novo while benefiting from the lower courts' analyses." Noffke ex rel. Swenson v. Bakke, 2009 WI 10, ¶9, 315 Wis. 2d 350, 760 N.W.2d 156 (citing Megal Dev. Corp. v. Shadof, 2005 WI 151, ¶8, 286 Wis. 2d 105, 705 N.W.2d 645). "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted). We give statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. (citing Bruno v. Milwaukee Cnty., 2003 WI 28, ¶¶8, 20, 260 Wis. 2d 633, 660 N.W.2d 656; Wis. Stat. § 990.01(1)). We interpret statutory language in the context of the statute in which it is used and in relation to closely-related statutes. Id., ¶46 (citations omitted). We interpret statutes to avoid absurd or unreasonable results. Id. (citations omitted). If the statutory language is unambiguous, we do not consult extrinsic sources of interpretation, such as legislative history. Id. (citations omitted).

## IV. ANALYSIS

¶19 Stoker argues that the Milwaukee County ordinance that reduced the pension multiplier from 2% to 1.6% for post-2011 service does not apply to her because the County is barred from making such prospective-only reductions to her vested retirement benefits without her personal consent. Stoker relies heavily on

12

the session laws from 1945, 1957, and 1965 to support her argument. In short, she argues that she is entitled to the most favorable pension formula available during her employment. Stoker asserts that when the County amended the formula to reduce the multiplier from 2% to 1.6% for unearned benefits, it served to "diminish or impair" her vested benefits.

¶20 Milwaukee County argues that the legislature has endowed it with home rule authority to enact prospective changes in the Milwaukee retirement system. The County argues that the pension formula reduction and its prospective-only application did not "diminish or impair" benefits already accrued for pension service credits earned. The County contends that the change does not "diminish or impair" Stoker's benefits because any potential future benefit, due to future service, is not vested until earned. The County asserts that under its home rule authority, it has the authority to amend its unvested pension plans with prospective-only application.

¶21 Because Milwaukee County reduced the multiplier only prospectively, we first determine whether the County has the legal right to reduce employee benefits on a prospective-only basis. We next determine whether Stoker has a vested right to have the 2% multiplier apply to her post-2011 service. Because we conclude that Milwaukee County may prospectively reduce unvested employee benefits and that Stoker has no vested right to have the 2% multiplier apply to her post-2011 service, we do not consider whether the Federation may consent on Stoker's behalf to a prospective reduction of her vested benefits.

13

A. Whether Milwaukee County May Prospectively
Reduce an Employee Benefit

¶22  To  determine  whether  Milwaukee  County  may prospectively modify unvested benefits, we turn to the session laws  that  govern  MCERS.    Chapter  138  of  the  Laws  of  1945 provides that every member of MCERS has a "vested right in the annuities and all other benefits in the amounts and on the terms and conditions . . . in effect at the date of commencement of his membership [in MCERS]."  Similarly, ch. 326 of the Laws of 1957 provides each MCERS member with a "vested right . . . to all increases in benefits covered by amendments subsequent to the date his membership is effective."  However, ch. 405 of the Laws of 1965 gives to Milwaukee County home rule authority "to make any changes in [its employee] benefit fund which hereafter may be deemed necessary or desirable for the continued operation of [MCERS]."  Stoker notes that ch. 405 expressly limits this home  rule  authority  by  stating  that  "no  such  change  shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of [MCERS] prior to the effective date of any such change."

¶23  Stoker interprets ch. 405 of the Laws of 1965 to allow Milwaukee County to reduce benefits only with respect to persons who began employment with Milwaukee County after the reduction takes effect.   Stoker reaches this interpretation by invoking the canon of statutory construction known as the rule of the last antecedent, arguing that "prior to the effective date of any  such  change"  modifies  "who  is  a  member"  rather  than

14

"annuities, benefits or other rights." Stoker thus argues that ch. 405 forbids Milwaukee County from reducing a benefit of a person whose county employment began prior to the effective date of the reduction. We disagree.

¶24 The principle of interpreting statutes to avoid unreasonable or absurd results is more compelling in this instance than the rule of the last antecedent. See Kalal, 271 Wis. 2d 633, ¶46; Chickasaw Nation v. United States, 534 U.S. 84, 94 (2001) (quoting Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 115 (2001)) (holding that canons of construction "'are often countered . . . by some maxim pointing in a different direction.'"). Stoker's interpretation of ch. 405 of the Laws of 1965 would prohibit Milwaukee County from reducing a current employee's expected, future benefits before they vest. That interpretation is unreasonable because a right that is unvested, by definition, can be taken away. See Black's Law Dictionary 1520 (10th ed. 2014) (A "vested right" is a "right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent."); Neiman v. Am. Nat. Prop. & Cas. Co., 2000 WI 83, ¶14, 236 Wis. 2d 411, 613 N.W.2d 160 ("The concept of vested rights is 'conclusory—a right is vested when it has been so far perfected that it cannot be taken away by statute.'") (quoting Charles B. Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692, 696 (1960)). We therefore conclude that ch. 405's limit on Milwaukee County's home rule

15

authority allows Milwaukee County to reduce a benefit that has not vested prior to the effective date of the reduction.

¶25  Indeed, Stoker seems to recognize that ch. 405's grant of home rule authority allows Milwaukee County to reduce a current employee's expected, future benefits before they vest. Specifically, Stoker argues that ch. 405 does not allow Milwaukee County to reduce the 2% multiplier with respect to her post-2011 service because her "right to the use of the 2% multiplier as to future as well as past service was already 'in existence'" when the multiplier was reduced.  Thus, Stoker's logic seems to acknowledge that ch. 405 would allow a prospective reduction of the 2% multiplier if she did not have a vested right to have the 2% multiplier apply to her post-2011 service.

¶26 Because Milwaukee County may prospectively reduce benefits before they vest, our analysis turns on whether Stoker has a vested right to the 2% multiplier for post-2011 service.

B. Whether Stoker Has a Vested Right to Have the 2% Multiplier Apply to Her Post-2011 Service for Milwaukee County

¶27  Having determined that the home rule authority in ch. 405 of the Laws of 1965 allows Milwaukee County to prospectively reduce benefits before they vest, we now determine whether Stoker has a vested right to have the 2% multiplier apply to her post-2011 service.

¶28  An employee benefit may be modified before it vests. Loth v. City of Milwaukee, 2008 WI 129, ¶¶33-43, 315 Wis. 2d 35, 758 N.W.2d 766.  In Loth, prior to 2004, the City of Milwaukee

16

offered premium-free health insurance to its employees that reached age 60, were employed by the city for at least 15 years, and retired. Id., ¶2.  In 2002 the city amended this retirement benefit to provide shared-premium-cost health insurance to anyone who reached age 60, was employed by the city for at least 15 years, and retired after January 1, 2004.  Id.  Loth had 15 years of city service in 1999, and in 2005 he reached age 60 and retired.  Id.  When Loth received shared-premium-cost health insurance after retiring, he sued the city, arguing that he was entitled to premium-free health insurance.  Id., ¶3.  He reasoned that he reached 15 years of service when the premium-free health insurance retirement benefit was in effect, and that reaching 15 years of city service was the only requirement for becoming entitled to this benefit.  Id.

¶29 We upheld the city's modification of the retiree health insurance benefit with respect to Loth.  Id., ¶¶6-7.  We determined that the city made a unilateral contract offer of premium-free retiree health insurance benefits, and that the city modified the benefits before Loth became entitled to them by accepting the offer.  Id., ¶¶6, 14.  We focused on the terms and conditions of the benefits to determine how they could be accepted by an employee and thus become an entitlement.  Id., ¶31.  According to the terms and conditions of the city's health insurance benefits for retirees, the benefits were accepted and became an entitlement when an employee fulfilled three requirements: being employed by the city for 15 years, reaching age 60, and retiring.  Id., ¶¶6, 16-29.  Because Loth did not

17

"perform the requested acts" of reaching age 60 and retiring while the premium-free health insurance benefit was in effect, id., ¶14, he had no contractual right to this benefit. Id., ¶6; see also id., ¶39 (Loth had no right to premium-free health insurance upon retirement because "he had not fully performed the services entitling him to such benefits when the City amended [its] policy . . . ."). We distinguished cases that rejected employers' attempts to reduce their employees' benefits after they vested. Id., ¶¶32-46. Thus, Loth stands for the principle that an employer may modify a benefit that has not vested because its terms and conditions for entitlement have not been satisfied.

¶30 To determine whether Milwaukee County reduced a vested benefit of Stoker, we focus on the terms and conditions of the multiplier. See id., ¶31; see also ch. 138, Laws of 1945 (stating that MCERS members have a vested right to benefits on the "terms and conditions" of the benefits). The terms and conditions of the 2% multiplier are located in Milwaukee County ordinances and the collective bargaining agreement. The ordinance that created the 2% multiplier stated that the 2% multiplier applied to "all pension service credit earned on and after January 1, 2001." M.C.G.O. § 201.24(5.15)(1)(a) (2000).[12] Pension credit service is earned by rendering service for Milwaukee County. M.C.G.O. App. B. § 301 (1980). The ordinance

---

[12] This ordinance created a 2% multiplier by adding 0.5% to the existing 1.5% multiplier. See supra note 5.

18

at issue provided that the 1.6% multiplier applied to "service . . . rendered on and after January 1, 2012." M.C.G.O. § 201.24(5.1)(2)(f) (2011). Likewise, the collective bargaining agreement adopted in 2011 provided that a 1.6% multiplier would apply to "all pension service credit earned on and after January 1, 2012." The plain language of these ordinances and the collective bargaining agreement shows that the multiplier accrues over time as county service is rendered, and the multiplier is directly tied to that service. Because the multiplier accrues as service is rendered, the home rule power in ch. 405 of the Laws of 1965 allows Milwaukee County to reduce the multiplier with respect to Stoker's service rendered after the effective date of the reduction.

¶31 Other case law also supports our conclusions that the multiplier accrues over time as service is rendered and that, therefore, Milwaukee County may reduce the multiplier with respect to service rendered after the reduction takes effect. In Loth we discussed the court of appeals' decision in Champine v. Milwaukee County, 2005 WI App 75, 280 Wis. 2d 603, 696 N.W.2d 245. Loth, 315 Wis. 2d 35, ¶¶44-46. We noted that the court of appeals in Champine held that a "payout for accrued sick leave represents a benefit that is 'earned as the work is performed.' An employee accrues sick allowance (and may earn the right to receive payout for the accrued sick allowance) gradually as the employee performs his or her work." Id., ¶46.

¶32 In Champine, prior to 2000, Milwaukee County allowed its non-union employees to receive the cash value of

19

approximately 400 hours of their unused sick leave upon retirement. Champine, 280 Wis. 2d 603, ¶¶2-3. In 2000 Milwaukee County adopted an ordinance that allowed its non-union employees to receive the cash value of all of their unused sick leave upon retirement. Id. This ordinance did not have a start date or end date. Id., ¶2. In February 2002 Milwaukee County adopted an ordinance that limited non-union employees' sick-leave payout at retirement to approximately 400 hours of unused sick leave, effectively reinstating the limit in place prior to 2000. Id., ¶6. This February 2002 ordinance took effect on March 15, 2002. Id.

¶33 The court of appeals held that the 2002 ordinance lawfully limited the sick-leave payout benefit with respect to sick leave that accrued after the limit took effect. Id., ¶¶15-17. Specifically, the court held that the ordinance's prospective reduction of the sick-leave payout benefit did not breach a contract with the non-union employees. Id., ¶14. However, the court held that non-union employees who retired after the effective date of the 2002 ordinance were entitled to receive a retirement payout of all of the sick leave that they accrued prior to the effective date of the 2002 ordinance. Id., ¶¶15-17. The court reasoned that the sick-leave payout benefit is "a form of deferred compensation that is earned as the work

20

is performed.  The benefit can be changed, but only as it is related to work not yet performed."  Id., ¶16.[13]

¶34  In Pasko v. Milwaukee County, 2013 WI App 91, 349 Wis. 2d 444, 836 N.W.2d 461, two Milwaukee County retirees sued the County for paying them the cash value of approximately 400 hours of unused sick leave upon retirement.  The two plaintiffs had been union members while Milwaukee County employees, and their union contracts provided that upon retirement they would receive a cash payout of all of their unused sick leave.  Pasko, 349 Wis. 2d 444, ¶6.  Before retiring, the plaintiffs were promoted to non-union managerial positions, thus subjecting them to the Milwaukee County ordinance adopted in February 2002, which limited the sick-leave payout upon retirement for non-

---

[13] Stoker argues that Champine is distinguishable because the court of appeals stated that "in the absence of a collective bargaining agreement or employment contract, [Milwaukee County] should not be bound to continue providing a benefit it now regrets offering." Champine v. Milwaukee Cnty., 2005 WI App 75, ¶19, 280 Wis. 2d 603, 696 N.W.2d 245.  Stoker interprets this language to mean that Champine involved neither a collective bargaining agreement nor a contract, unlike the present case. To the contrary, the court of appeals explained that the 2000 ordinance, which provided a right to a payout of all unused sick leave upon retirement, was a contract while it was in effect. Id., ¶14.  This quoted language simply meant that the 2000 ordinance did not provide a vested right to the sick-leave payout with respect to future service.  In any event, in a nearly identical case that involved union contracts with Milwaukee County, the court of appeals reached the same conclusion as it did in Champine.  See Pasko v. Milwaukee Cnty., 2013 WI App 91, ¶¶9-14, 349 Wis. 2d 444, 836 N.W.2d 461.  Thus, the fact that Champine did not involve union contracts or collective bargaining agreements is not a meaningful distinction.

21

union employees to approximately 400 hours of unused sick leave. Id., ¶¶3-6. This ordinance was at issue in Champine. Id., ¶5. Because the plaintiffs retired as non-union employees, Milwaukee County argued that, under the 2002 ordinance, they were entitled to a payout of only approximately 400 hours of unused sick leave. Id., ¶¶6, 9.

¶35 The court of appeals held that the plaintiffs were entitled to a payout upon retirement of all of the unused sick leave that they accrued while they were covered by union contracts with Milwaukee County. Id., ¶13. Under the union contracts, the sick-leave hours that the plaintiffs accrued while they were union members "vested as they were earned." Id., ¶¶9-13. Thus, the "vesting trigger" of sick leave was the "day-by-day accrual" of sick leave. Id., ¶12. The court noted that Milwaukee County could have used, but did not use, a different vesting trigger in its union contracts so as to preserve its ability to retroactively reduce the amount it was required to pay retirees for sick leave already accrued. Id.

¶36 In Valeo v. J. I. Case Co., 18 Wis. 2d 578, 119 N.W.2d 384 (1963), a collective bargaining agreement provided that employees were eligible for a certain amount of vacation pay annually and that the right to vacation pay began accruing each year on June 1. Valeo, 18 Wis. 2d at 579. The employer terminated the collective bargaining agreement on February 29, 1960, three months before June 1. Id. A strike ensued and lasted until a new collective bargaining agreement was signed on September 19, 1960. Id. at 579-80. The employer denied its

22

employees any vacation pay for the period of June 1, 1959, through February 29, 1960, arguing that the right to vacation pay did not vest until June 1 and that the collective bargaining agreement was terminated before June 1. Id. at 580. An employee sued the employer, arguing that he was entitled to vacation pay that accrued during the nine months from June 1, 1959, through February 29, 1960. Id. at 580, 583. This court held that the employee had a vested right to the vacation pay that "accrued as services were performed" for the employer during these nine months. Id. at 585. The court reasoned that "the nature of vacation pay [is] compensation for work performed," and the collective bargaining agreement did not provide that the right to vacation pay vested based on something besides service rendered. Id.

¶37 Champine, Pasko, and Valeo show that certain employee benefits, by their nature, accrue as service is rendered unless a contract or law states otherwise. In the present case, "the nature" of the pension multiplier is "compensation for work performed." See id. As we already explained, the relevant Milwaukee County ordinances and the collective bargaining agreement expressly state that the multiplier accrues as service is rendered. See M.C.G.O. §§ 201.24(5.15) (2000), App. B. 301 (1980), 201.24(5.1)(2)(f) (2011). If Milwaukee County wanted to make the 2% multiplier vest immediately when enacted with respect to all future service, it could have used a "vesting trigger" besides "day-by-day accrual," but "[i]t did not." See Pasko, 349 Wis. 2d 444, ¶12. Thus, the language of the

23

ordinances and collective bargaining agreement and the nature of the multiplier show that the multiplier, like vacation pay and sick leave, accrues over time as service is rendered.

¶38 Because the multiplier is "a form of deferred compensation that is earned as the work is performed," it "can be changed, but only as it is related to work not yet performed."  See Champine, 280 Wis. 2d 603, ¶16. See also Wisconsin Prof'l Police Ass'n v. Lightbourn, 2001 WI 59, ¶¶111-12, 243 Wis. 2d 512, 627 N.W.2d 807 (holding that statute governing Wisconsin Retirement System, which stated that benefits accrued as service is rendered, allows reduction of benefits with respect to service performed after the reduction).[14]

---

[14] The statute in Lightbourn provided in relevant part:

> Rights exercised and benefits accrued to an employee under this chapter for service rendered shall be due as a contractual right and shall not be abrogated by any subsequent legislative act.  The right of the state to amend or repeal, by enactment of statutory changes, all or any part of this chapter at any time, however, is reserved by the state and there shall be no right to further accrual of benefits nor to future exercise of rights for service rendered after the effective date of any amendment or repeal deleting the statutory authorization for the benefits or rights.

(continued)

24

¶39 <u>Loth</u>, <u>Champine</u>, <u>Pasko</u>, and <u>Valeo</u> show that Stoker's reliance on ch. 138 of the Laws of 1945, ch. 326 of the Laws of 1957, and ch. 405 of the Laws of 1965 is misplaced. These chapters state that MCERS members shall have a benefits contract that protects their vested rights, but these chapters do not explain whether the 2% multiplier is a vested right with respect to future service. Indeed, these chapters do not mention this multiplier at all.[15] As we explained, the relevant Milwaukee County ordinances, the collective bargaining agreement, and <u>Loth</u>, <u>Champine</u>, <u>Pasko</u>, and <u>Valeo</u> show that Stoker did not have a vested right to have the 2% multiplier apply to her post-2011 service.

¶40 We note that our conclusion that Milwaukee County may prospectively modify benefits before they vest is consistent with the anti-cutback rule of the Employee Retirement Income Security Act ("ERISA") of 1974.[16] The anti-cutback rule allows

---

Wis. Stat. § 40.19(1) (1997-98). Stoker argues that <u>Lightbourn</u> is not helpful in the present case because, unlike Wis. Stat. § 40.19(1), the session laws governing MCERS do not state that benefits accrue as service is rendered or allow prospective reductions of benefits. However, the relevant Milwaukee County ordinances and collective bargaining agreement state that the pension multiplier accrues as service is rendered, and ch. 405 of the Laws of 1965 allows prospective reduction of unvested benefits. Thus, we find helpful the <u>Lightbourn</u> court's conclusion that a benefit that accrues as service is rendered may be prospectively reduced.

[15] Section 1 of ch. 326, Laws of 1957 mentions a multiplier, but Stoker does not argue that this multiplier is relevant in the present case.

[16] <u>See</u> 29 U.S.C. § 1054(g).

25

employers subject to ERISA to modify benefits with respect to future service because those benefits have not yet accrued. Cent. Laborers' Pension Fund v. Heinz, 541 U.S. 739, 747 (2004). The anti-cutback rule prohibits employers subject to ERISA from adding new conditions to benefits that have accrued for service rendered. Id. Stoker argues that Milwaukee County may go beyond the protections under the anti-cutback rule by providing benefits that vest before service is rendered. However, as we have explained, the relevant Milwaukee County ordinances and collective bargaining agreement show that the multiplier is a benefit that accrues for service rendered.

¶41 Similarly, Stoker's reliance on Welter v. City of Milwaukee, 214 Wis. 2d 485, 571 N.W.2d 459 (Ct. App. 1997), and Rehrauer v. City of Milwaukee, 2001 WI App 151, 246 Wis. 2d 863, 631 N.W.2d 644, is also misplaced. In Welter the City of Milwaukee provided a duty disability retirement allowance to police officers who became disabled due to injuries suffered in the course of their employment. Welter, 214 Wis. 2d at 487-88. At a certain age, known as the conversion age, an officer who was receiving a duty disability retirement allowance began receiving a less-generous service retirement allowance instead. Id. at 488. The City of Milwaukee lowered the conversion age while the plaintiffs were employed as police officers. Id. The plaintiffs became disabled and received a duty disability retirement allowance that was converted to a service retirement allowance when they reached this lower conversion age. Id. The plaintiffs sued the city, arguing that they had a vested right

26

to the higher conversion age that was in effect when they began employment with the City of Milwaukee. Id. The court of appeals agreed with the plaintiffs. Id. The court of appeals reasoned that an officer's right to a disability pension vests when the officer begins employment with the City of Milwaukee, rather than when the officer becomes disabled. Id. at 494-95. The court held that two session laws governing the City of Milwaukee's retirement system dictated this result. Id.

¶42 Welter is inapposite in the present case. Welter involved a right that vested when a person began employment. In the present case, we already determined that Stoker accrues a right to the pension multiplier as she renders county service. Further, the multiplier in effect when Stoker began employment with Milwaukee County was 1.5%, and the multiplier has not been reduced below that level with respect to any of Stoker's past or future service.[17] Although the court of appeals in Welter relied solely on two session laws to conclude that a disability pension vested when employment began, we think the better approach in the present case is to interpret the relevant ordinances to determine the extent to which the multiplier was a "vested" right within the meaning of the session laws governing MCERS. See Dunn v. Milwaukee Cnty., 2005 WI App 27, ¶¶2, 10-11, 13, 279 Wis. 2d 370, 693 N.W.2d 82 (relying on relevant ordinance to

---

[17] This fact also provides a basis for distinguishing ch. 138 of the Laws of 1945, upon which Stoker heavily relies, because this chapter applies only to benefits in existence when a person's county employment began.

27

determine if Milwaukee County employees had a vested right to future pay increases); Champine, 280 Wis. 2d 603, ¶¶13-14 (relying on relevant ordinance to determine if Milwaukee County employees had a vested right to receive a cash payout for all of their unused sick leave upon retiring); Hussey v. Milwaukee Cnty., 740 F.3d 1139, 1143 (7th Cir. 2014) (relying on relevant ordinances to determine if Milwaukee County retirees had a vested right to premium-free health insurance). Again, these ordinances provide that the multiplier accrues as service is rendered.

¶43 In Rehrauer the plaintiffs began their employment as City of Milwaukee firefighters prior to February 8, 1972. Rehrauer, 246 Wis. 2d 863, ¶2. When their employment began, the City of Milwaukee provided limited-term duty disability benefits to its firefighters who became disabled due to an injury suffered during the course of employment. Id. A contract in effect between February 8, 1972, and September 30, 1977, provided more-generous lifetime duty disability benefits. Id., ¶¶2, 7. After September 30, 1977, the City of Milwaukee again offered limited-term duty disability benefits. Id., ¶3 n.3. The plaintiffs applied for disability benefits after September 30, 1977, so the City of Milwaukee awarded them limited-term duty disability benefits in effect at that time. Id., ¶2. The plaintiffs sued the city, arguing that they gained a vested contractual right to the lifetime duty disability benefits established during their employment. Id., ¶5.

28

¶44 The court of appeals agreed with the firefighters. Id. The court concluded that "the firefighters gained vested rights in the highest level of duty disability benefits that came to be contractually established during their years of active duty." Id., ¶20. The court reasoned that, "[u]nder § 36-13-2-c of the Milwaukee City Charter, [the plaintiffs] have a 'vested right in the . . . benefits in the amounts and on the terms and conditions and in all other respects as provided in the law . . . in effect at the date of commencement of his [or her] membership and as subsequently amended.'" Id., ¶16 (emphasis added by court of appeals).

¶45 Rehrauer is inapposite in the present case. In Rehrauer the court of appeals relied on an ordinance that expressly provided a vested right to an increase in benefits, and it also relied on the holding in Welter that disability benefits vest immediately rather than when an employee becomes disabled. Id., ¶¶13-14, 16. In contrast, the ordinances relevant in the present case do not state that MCERS members have a vested right to have an increased multiplier apply in perpetuity. To the contrary, these ordinances provide that the multiplier accrues over time as service is rendered. It is true that the ordinance relied upon in Rehrauer is similar to ch. 326 of the Laws of 1957, which provides each MCERS member with a "vested right . . . to all increases in benefits covered by amendments subsequent to the date his membership is effective." However, as we already discussed, ch. 326 does not explain the precise nature of the "vested right" it mentions. Because the

multiplier vests over time as service is rendered, the "vested right" to which ch. 326 refers does not include a vested right to have the 2% multiplier apply in perpetuity.  Rather, the "vested right" to which ch. 326 refers includes the right to have the 2% multiplier apply to all service that is rendered while the 2% multiplier is in effect.

¶46 Accordingly, we are not persuaded by Stoker's argument that Welter and Rehrauer apply in the present case because they involved session laws similar to the session laws that govern MCERS.  Disability benefits, unlike the pension multiplier, are a promise by an employer that is not conditioned on subsequent action by an employee, such as rendering service.  Instead, disability benefits are a promise to receive coverage for an unforeseen event that happens at some point in the future.  As we explained, we rely on the relevant Milwaukee County ordinances and the collective bargaining agreement to determine the extent to which the 2% multiplier is a vested right within the meaning of the session laws.  In light of these ordinances and the collective bargaining agreement, we conclude that Stoker does not have a vested right to have the 2% multiplier apply to her post-2011 service, which she rendered after the 2% multiplier was reduced to 1.6%.  Because Stoker did not have a vested right to have the 2% multiplier apply to her post-2011 service, Milwaukee County was free to reduce the multiplier below 2% for her post-2011 service.  See Loth, 315 Wis. 2d 35, ¶¶30-47.

V.  CONCLUSION

¶47 We conclude that Milwaukee County did not breach the contract with Stoker when it amended the pension multiplier from 2% to 1.6%. The amendment did not breach Stoker's contractual right to retirement system benefits earned and vested because it had prospective-only application to future service credits not yet earned, specifically, on and after January 1, 2012. We conclude that the legislature preserved Stoker's rights and benefits already accrued but also gave Milwaukee County home rule authority with the flexibility to enact such prospective-only changes. We conclude that Stoker does not have a vested right to have the 2% multiplier apply to her then-unearned post-2011 service. In other words, Milwaukee County could so amend the formula and apply it prospectively because that prospective application does not "diminish or impair" benefits accrued from service credits already earned. Because we conclude that Milwaukee County did have the ability to make these prospective-only reductions of the multiplier without Stoker's personal consent, we need not address whether the Federation lawfully consented, on Stoker's behalf, to the reduction.

*By the Court*.—The decision of the court of appeals is reversed and remanded.

¶48  ANN WALSH BRADLEY, J.  *(dissenting).*  Rather than addressing the session laws which provide a clear answer to our inquiry and dictate protection of the employees' benefits, the majority shifts the focus of its analysis to language in the Milwaukee County General Ordinance.  It is only by repeatedly ignoring the language of the governing session laws that the majority is able to conclude that the County may reduce the pension multiplier, thereby dealing a blow to the rights of the employees.

¶49  I conclude instead, as did a unanimous court of appeals, that the session laws mean what they say: employees have a vested right to their benefits when they accept employment with the County and the County is not permitted to diminish or impair those benefits.  As such, the County was without authority to pass an ordinance reducing Stoker's pension multiplier.  Accordingly, I respectfully dissent.

I

¶50  The Milwaukee County Employee Retirement System [MCERS] was created by the legislature in chapter 138 of the Laws of 1945.  That session law provided that employees shall have a benefit contract and vested rights to their benefits at the time each employee commences membership:

> Every future entrant who shall become a member of [MCERS] after the effective date of this act <u>shall have</u> a similar <u>benefit contract and vested right</u> in the annuities and all other benefits in the amounts and on the terms and conditions and in all other respects as provided in the law under which the retirement system was established as such law shall have been amended and be in effect <u>at the date of commencement of his membership.</u>

1

Laws of 1945, Ch. 138 (emphasis added). The legislature did not refer to an employee earning or accruing benefits through services rendered. Rather, the legislature provided that rights to benefits "vested" at the "date of commencement of [an employee's] membership."[1] It is hard to imagine how much clearer the legislature could have been.

¶51 Not surprisingly, Wisconsin courts have previously concluded that language similar to that used in chapter 138 of the Laws of 1945 created a vested right to benefits at the time of hire. In Welter v. City of Milwaukee, 214 Wis. 2d 485, 571 N.W.2d 459 (Ct. App. 1997), the court considered substantially similar laws relating to police officers' retirement benefits. The session law at issue provided that:

> Every such member . . . shall thereby have a benefit contract in said retirement system of which he is such member or beneficiary as of the effective date of this act . . . . [E]ach member and beneficiary having such a [retirement system] benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without [the officer's] consent. . . . Every future entrant who shall become a member of this retirement system after the effective date of this act shall have a similar benefit contract and vested right in the annuities and all other benefits . . . .

Laws of 1947, ch. 441, § 30(2). After considering this language, the court determined that the retirement benefits at issue vested at the time officers became employees.

---

[1] "Vested" is defined as "[t]hat has become a completed, consummated right for present or future enjoyment; not contingent; unconditional; absolute." Black's Law Dictionary 1557 (7th ed. 1999).

2

¶52 The Welter court reasoned that the language of the session laws "[is] not ambiguous; [its] meaning is plain." Welter, 214 Wis. 2d at 491. "Under [the laws at issue], retirement-plan benefits in effect when a Milwaukee police officer becomes a member of the retirement system are vested as to that officer unless the officer agrees to a change." Id. The court rejected the city's argument that the rights vested at some later date, stating that "[t]his argument, however, ignores the legislative command that the critical date is not that of the duty-related disability but the date the officer becomes a member of the retirement system——the date he or she was first employed by the City as a police officer." Id. at 494-95. See also Rehrauer v. City of Milwaukee, 2001 WI App 151, ¶¶11-13, 246 Wis. 2d 863, 631 N.W.2d 644 (following Welter's conclusion that the officers' benefits vested at the date of hire).

¶53 The majority attempts to avoid the plain language of the session laws and the cases interpreting similar language by shifting its focus to the language of the Milwaukee County General Ordinance. Majority op., ¶30. It asserts that this is the proper approach because the session laws do not "explain whether the 2% multiplier is a vested right with respect to future service" and thus, the majority implies that the Ordinance does. Id., ¶39. Pointing to the Ordinance's statement that 0.5% of the multiplier applies to "service rendered," the majority concludes that this means "the

3

multiplier accrues over time." Id., ¶30.[2] It then states that Welter is inapposite because it relied on the language of the session laws and not an ordinance. Id., ¶42.

¶54 Contrary to the majority's implications, the Ordinance does not directly address whether the multiplier creates vested rights with respect to future service. The majority's strained reasoning on this point conflicts with the common definition of the word "accrue." The word "accrue" generally means "to accumulate over time." The American Heritage Dictionary of the English Language 12 (3d ed. 1992); see also Black's Law Dictionary 21 (7th ed. 1999) (defining accrue as "[t]o accumulate periodically").

¶55 Nothing in the Ordinance indicates that the multiplier grows over time. Under the Ordinance, an employee "shall receive an amount equal to one and one-half (1½) percent of his final average salary multiplied by the number of his years of service rendered." MCGO § 201.24(5.1)(1).

¶56 The Ordinance further provides that "all pension service credit earned on and after January 1, 2001, shall be credited in an amount equal to an additional one-half (0.5) percent of the member's final average salary." MCGO § 201.24(5.15). As indicated by the language of the Ordinance, the multiplier does not grow or accumulate in proportion to the

---

[2] It is unclear why the majority focuses on the language in the Ordinance creating the additional 0.5% multiplier and not the language regarding the base 1.5% multiplier, MCGO § 201.24(5.1)(1). The two provisions have different language.

4

years of service rendered. It is the number of pension service credits that increases over time, not the multiplier. The multiplier itself does not "accrue."

¶57 The majority's refusal to acknowledge the words of the governing session laws is evident in its reliance on Champine, Pasko, and Valeo to support its conclusion that the multiplier accrues as service is rendered. I recognize that each of those cases determined that under the governing law or contract being interpreted, the benefit at issue vested as service was rendered. However, each of those cases also acknowledged that legislation or a contract could include a different vesting trigger, such as the commencement of employment. See Champine v. Milwaukee County, 2005 WI App 75, ¶19, 280 Wis. 2d 603, 696 N.W.2d 245; Pasko v. Milwaukee County, 2013 WI App 91, ¶12, 349 Wis. 2d 444, 836 N.W.2d 461; Valeo v. J. I. Case Co., 18 Wis. 2d 578, 584, 119 N.W.2d 384 (1963).

¶58 In this case, clear language in a governing session law creates a vesting trigger different from the trigger found in those cases. Chapter 138 of the Laws of 1945 states that employees "shall have a similar benefit contract and vested right in the annuities and all other benefits in the amounts and on the terms and conditions . . . at the date of commencement of his membership." In other words, upon acceptance of employment, employees gain a vested right to benefits on the terms and

5

conditions of the contract.[3] Because one of the terms and conditions of the pension benefit was that it would be calculated using a 2% multiplier, there is a vested right to that multiplier.

¶59 The majority further attempts to distance this case from the governing session laws by asserting that chapter 138 of the Laws of 1945 does not apply because that chapter applies only to benefits in existence when a person's county employment began and that the multiplier when Stoker began employment was 1.5%, lower than the 1.6% at issue here. Majority op., ¶42 n.17. Again, the majority's narrow focus has led it astray.

¶60 Although chapter 138 of the Laws of 1945 could have initially been read as the majority posits, a 1957 amendment to that chapter clarifies that an employee has vested rights to increases in benefits, not just the benefits available at the start of employment. Specifically, Chapter 326 of the Laws of 1957 amended the language to read:

---

[3] Citing Loth v. City of Milwaukee, 2008 WI 129, 315 Wis. 2d 35, 758 N.W.2d 766, the majority alludes to the argument that the session law was a unilateral contract offer that the county could modify until an employee became entitled to the benefits by accepting the offer. Majority op., ¶¶29, 46. It is understandable that the majority does not attempt to directly embrace the unilateral contract argument. Neither the session law nor the Ordinance creates eligibility requirements that employees need to meet before being entitled to the multiplier. As illustrated above, to the extent the session law can be viewed as a unilateral contract offer, the only action an employee need take to accept the offer, and thereby create a binding contract, is to accept employment. Similarly, under the Ordinance, an employee is entitled to the multiplier regardless of how many years of service the employee has rendered.

6

> [E]ach member and beneficiary having such a benefit contract shall have a vested right to all benefits stated by the act at the time his membership is effective <u>and to all increases in benefits covered by amendments subsequent to the date his membership is effective</u> and they shall not be diminished or impaired by subsequent legislation on or by any other means without his consent.

Ch. 326, Laws 1957, § 6 (emphasis added).

¶61 Nearly identical language was interpreted in Rehrauer, 246 Wis. 2d 863. In that case the ordinance at issue provided that firefighters have a "vested right in the . . . benefits in the amounts and on the terms and conditions and in all other respects as provided in the law . . . in effect at the date of commencement of his membership and as subsequently amended." Id., ¶16 (quoting Milwaukee City Charter § 36-13-2-c). Based on the language of the ordinance and the governing statutes, the principles set forth in Welter, and the importance of the attraction and retention of public employees, the court concluded that "firefighters gained vested rights in the highest level of duty disability benefits that came to be contractually established during their years of active duty." Id., ¶20. Given that the language in this case is nearly identical to that at issue in Rehrauer, there is little justification for interpreting it differently.

II

¶62 In contrast to the majority's interpretation, I conclude that the language of the session law governs: employees "shall have a vested right to all benefits stated by the act at the time his membership is effective and to all increases in benefits covered by amendments subsequent to the date his

7

membership is effective." Ch. 326, Laws of 1957, § 6. This language is unambiguous and is not open to alternative interpretations. See Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶145, __ Wis. 2d ___, 851 N.W.2d 337 (concluding that similar provisions in Milwaukee's Charter "unmistakably evince the clear intention of the Common Council to create a 'vested and contractual right to the [pension] benefits in the amount and on the terms and conditions' as provided in [the Charter]").

¶63 Here, upon accepting employment with the County in 1982, Stoker entered into a contract which provided her with a vested right to a 1.5% pension multiplier. See MCGO § 201.24(5.1) (1981). During her employment, that multiplier was increased to 2%. See MCGO § 201.24(5.15)(1) (enacted 2000). Under chapter 326 of the Laws of 1957, Stoker had a vested right to the increase as well.

¶64 Once her rights to the multiplier vested, the County was unable to reduce it. The legislature's restrictions on the County's home rule authority with respect to altering employee benefits are clear. It instructed that "no such change shall operate to diminish or impair the annuities, benefits or other rights of any person who is a member of [MCERS] prior to the effective date of any such change." Ch. 405, Laws 1965. An ordinance that conflicts with the authority granted by the session laws is void. See State ex rel. Ziervogel v. Wash. Cnty. Bd. of Adjustment, 2004 WI 23, ¶38, 269 Wis. 2d 549, 676 N.W.2d 401. Here, the County's amendment to the Ordinance would operate to reduce Stoker's pension multiplier to 1.6%, thereby

8

conflicting with the Legislature's mandate that employee rights and benefits not be diminished. Accordingly, the amendment to the Ordinance is void.

¶65 In sum, the majority's attempt to avoid the language of the governing session laws and shift the focus to the language in the Ordinance is unpersuasive. It turns a blind eye to the clear language of the session laws which must trump the amendment to the County Ordinance.

¶66 Although the County offered employment to individuals with the promise that a certain pension benefit formula would accompany such employment, the majority erroneously concludes that the County has unfettered discretion to prospectively reduce it. As a result, an employee who accepted the offer has no contractual rights to enforce that formula. Because I conclude that employees have a vested right to the formula containing the multiplier and that the County was without authority to pass an ordinance reducing that multiplier, I would affirm the unanimous court of appeals' decision.[4]

---

[4] The same day the court heard argument on this case, we also heard argument on another case involving when Milwaukee County employees' benefits become vested. The decision in that case is still pending. Efforts should be made to make the two opinions consistent. The core function of courts is, of course, clear, consistent, and reliable application of the law.

Because of the court's new procedure for opinion preparation and mandate, I cannot comment on the other decision at this time given that I want this dissent to be mandated at the same time as the majority opinion. See State v. Gonzalez, 2014 WI 124, ¶30, ___ Wis. 2d ___, ___ N.W.2d ___ (Abrahamson, C.J., concurring) (setting forth the new procedure).

¶67  For the reasons set forth above, I respectfully dissent.

¶68  I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this opinion.