# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:　　　　2020AP1346

Complete Title of Case:

### JAMES E. MILLER, JR. AND MARION HOLLEY,

#### PLAINTIFFS-RESPONDENTS,

#### V.

### CITY OF MILWAUKEE AND MILWAUKEE EMPLOYEES' RETIREMENT SYSTEM,

#### DEFENDANTS-APPELLANTS.

| | |
|---|---|
| Opinion Filed: | December 28, 2021 |
| Submitted on Briefs: | June 9, 2021 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Brash, C.J., Donald, P.J., and Dugan, J. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendants-appellants, the cause was submitted on the briefs of *Patrick J. McClain* of the *City of Milwaukee* in Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *William R. Rettko* of *Rettko Law Offices, S.C.* in Brookfield. |

**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**December 28, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2020AP1346**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CV8924

**IN COURT OF APPEALS**

---

JAMES E. MILLER, JR. AND MARION HOLLEY,

     PLAINTIFFS-RESPONDENTS,

  V.

CITY OF MILWAUKEE AND MILWAUKEE EMPLOYEES' RETIREMENT

SYSTEM,

     DEFENDANTS-APPELLANTS.

---

     APPEAL from an order of the circuit court for Milwaukee County: TIMOTHY M. WITKOWIAK, Judge. *Reversed and cause remanded*.

     Before Brash, C.J., Donald, P.J., and Dugan, J.

¶1    DUGAN, J.  The City of Milwaukee and Milwaukee Employees' Retirement System[1] (collectively the City) appeal an order of the circuit court granting summary judgment in favor of James E. Miller, Jr. and Marion Holley. Miller and Holley, two former police officers with the City, commenced this action against the City arguing that they were entitled to begin collecting their retirement benefits at the age of fifty-seven.  The City disagrees and argues that Miller and Holley were not entitled to collect retirement benefits until the age of sixty because Miller and Holley returned to employment with the City as general city employees,[2] thereby changing the minimum service retirement age applicable to both Miller and Holley from fifty-seven to sixty.

¶2    For the reasons set forth herein, we agree with the City, and we conclude that Miller and Holley are not entitled to receive retirement benefits until age sixty as a result of their re-employment under the classification as general city employees.  We further conclude that Miller and Holley had no vested right in the minimum service retirement age applicable to police officers.  Accordingly, we reverse the order of the circuit court and remand with directions to grant summary judgment in favor of the City.

## BACKGROUND

¶3    Miller and Holley commenced this action under WIS. STAT. § 806.04(2) (2019-20),[3] against the City on November 21, 2019, requesting a

---

[1] We note that the Milwaukee Employees' Retirement System is also identified as the Milwaukee Employes' Retirement System.  For purposes for this appeal, we use ERS.

[2] The parties do not dispute the classification of Miller and Holley as general city employees when they returned to employment.

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

declaratory judgment that they were entitled to begin collecting the retirement benefits that they earned during their service as police officers at the age of fifty-seven. The retirement benefits claimed were a monthly deferred retirement allowance and a lump-sum Global Pension Settlement bonus. Miller claimed a monthly allowance of $2,260.96 and a lump-sum payment of $13,314.39. Holley claimed a monthly allowance of $724.01 and a lump-sum payment of $4,263.56.

¶4     It is undisputed that Miller and Holley served as police officers for the City, and Miller and Holley became members of the ERS as a result of their employment. Miller began his employment with the City as a police officer in 1986 and left his employment in 2004. Holley began his employment with the City as a police officer in 1993 and left his employment in 2001. At the time that Miller and Holley left their employment as police officers, neither had reached the "minimum service retirement age" for "policemen" of fifty-seven years old. Milwaukee City Charter (MCC) § 36-05-1-b (2013). Further, both Miller and Holley elected the deferred retirement option provided under MCC § 36-05-6-d-2, to leave their "accumulated contributions in the fund" until they reached the minimum service retirement age.

¶5     Subsequent to leaving employment as a police officer, Miller accepted a part-time position in the Milwaukee Public Schools (MPS), where he worked from 2009 to approximately 2015. Holley accepted a subsequent position with the City and worked for the City's Department of Public Works (DPW) for a short period of time beginning in May 2017. At the time that both accepted subsequent employment with the City, neither had reached the age of fifty-seven. Additionally, neither had reached the age of fifty-seven upon leaving their subsequent employment with the MPS or the DPW.

3

¶6      Miller received a notification from the ERS on April 7, 2016, that he would begin receiving his retirement benefits when he turned sixty years old, and Holley was similarly notified by the ERS on September 14, 2017, that he would begin receiving his retirement benefits when he attained sixty years of age. Miller and Holley then filed this action for declaratory judgment because they contend that they had a vested right to begin receiving their retirement benefits earned from their employment as police officers at age fifty-seven.

¶7      The parties agreed that there were no factual disputes and filed cross-motions for summary judgment. The circuit court granted summary judgment in favor of Miller and Holley and found that they were entitled to begin collecting the benefits that they accrued as police officers when they reached fifty-seven years old. The circuit court found that the MCC allowed Miller and Holley to return to employment with the City and "earn additional benefits at the rate and on the terms and conditions set for those new benefits while preserving the previously earned benefits at the terms and conditions previously set for those earned benefits." The circuit court reasoned that the minimum service retirement age of fifty-seven for police officers was one of those preserved terms and conditions; therefore, Miller and Holley had a vested right in their minimum service retirement age of fifty-seven. The circuit court further reasoned that the applicable minimum service retirement age could not be changed from fifty-seven to sixty without Miller and Holley consenting to the change. The City appealed.

## DISCUSSION

¶8      On appeal, the City argues that the circuit court misinterpreted the provisions of the MCC when it granted summary judgment in favor of Miller and Holley on the basis that they had a vested right to begin collecting benefits at age

4

fifty-seven. "We independently review whether the circuit court correctly granted summary judgment[.]" *Stoker v. Milwaukee Cnty.*, 2014 WI 130, ¶16, 359 Wis. 2d 347, 857 N.W.2d 102. Summary judgment shall be rendered if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶9 Additionally, the interpretation of a municipal ordinance is a question of law that we review *de novo* applying the same principles used in statutory interpretation. *Milwaukee Dist. Council 48 v. Milwaukee Cnty.*, 2019 WI 24, ¶11, 385 Wis. 2d 748, 924 N.W.2d 153. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). We give statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* In addition, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *Id.*, ¶44.

¶10 The parties dispute the interpretation of the provisions of Chapter 36 of the MCC that govern the ERS and, in particular, those provisions that govern the deferred retirement option provided to ERS members found in MCC § 36-05-6-d. Under the deferred retirement option, a member of the ERS who "separates from service" before becoming eligible for retirement has two options: (1) withdraw his or her "accumulated contributions" in the manner provided for members who cease to be employees except by death or retirement or (2) elect to "leave accumulated

contributions in the fund until the member shall attain minimum service retirement age." MCC § 36-05-6-d. Under the second option, when the member reaches the minimum service retirement age, "the member shall be entitled to a retirement allowance which shall be calculated in the same manner as specified in sub. 1."[4]

¶11 However,

> [s]hould a member who has elected a deferred retirement subsequently return to service prior to attaining the minimum service retirement age, *the member shall again become an active member of this retirement system* and the credits for service which he or she had at the time of such separation shall be restored to the member. *Upon subsequent retirement* the member shall be credited with his or her service as a member subsequent to his or her last restoration to membership and the member shall receive an allowance as if the member were a new member; and in addition *the member shall receive an allowance in respect of service prior to his or her last restoration to service computed on the formula in effect at the time he or she first left such service*[.]

MCC § 36-5-6-d (emphasis added).

¶12 Miller and Holley argue that they were entitled to begin collecting any retirement benefits earned during their employment as police officers at age fifty-seven because that was a term and condition of their retirement benefits to which they had a vested right under MCC § 36-13-2. The City, on the other hand, argues

---

[4] The "same manner as specified in sub. 1" refers to MCC § 36-05-1 that governs what the City terms "Normal Service Retirement" where an employee reaches the applicable minimum service retirement age and chooses to retire. The deferred retirement section applicable here covers those who leave employment with the City prior to reaching the minimum service retirement age and are thus ineligible for Normal Service Retirement under "sub. 1." *See* MCC § 36-05-6-d. Accordingly, those who are covered by the deferred retirement section are not considered to have retired from City employment. Instead, they are considered to have left employment with the City prior to retirement. As the deferred retirement section states, employees under this section are considered to have "separate[d] from service"—not retired—and their status as retired is "deferred." MCC § 36-05-6-d. Therefore, we also reject Miller and Holley's contention that those who elect deferred retirement are in fact retired while they await receipt of their benefits.

that the subsequent re-employment of Miller and Holley with the MPS and the DPW, respectively, triggered the additional language of the deferred retirement section and transformed Miller and Holley into active members of the ERS with the new minimum service retirement age of sixty. In other words, the City contends that Miller and Holley were reclassified from policemen to general city employees upon their re-employment with the MPS and the DPW and thus became disqualified from receiving retirement benefits at age fifty-seven as former police officers.

¶13 We agree with the City, and we conclude that Miller and Holley are unable to collect retirement benefits until reaching age sixty because their re-employment with the MPS and the DPW reclassified them and changed the applicable minimum service retirement age. Interpreting the plain language of the deferred retirement section in its proper context, we conclude that it is clear that Miller's and Holley's decision to return to employment with the MPS and the DPW delayed their receipt of benefits until they reach the age of sixty, and any other result creates internal inconsistencies within the ERS such that the provisions are rendered inoperable. As such, Miller and Holley had no vested right in the minimum service retirement age of fifty-seven.

¶14 The MCC clearly states that the "minimum service retirement age" shall be fifty-seven for policemen and sixty for general city employees: "The minimum service retirement age shall be, in the case of firemen and policemen, age 57, for members enrolled in the retirement system prior to January 1, 2014, age 60[.]" MCC § 36-05-1-b. "Policemen" is defined as "a person first employed on or after July 30, 1947, in the police department whose duty it is to preserve peace and good order of the city, having the power of arrest without warrant." MCC § 36-02-24. A "general city employee" is defined as "[a]n employee of the city or a city agency who is not a policeman or fireman." MCC § 36-02-17. Miller and Holley

argue, the retirement age applicable to police officers applies to them because they were police officers with the City at the time they became members of the ERS and thus that retirement age was a vested right and that remained the age applicable to their benefits despite their re-employment with the City.

¶15 We agree that prior to the time that Miller and Holley separated from service as police officers, they were active members of the ERS as policemen with an applicable minimum service retirement age of fifty-seven. Their decision to separate from service as police officers then transformed them into inactive members of the ERS with the same minimum service retirement age of fifty-seven, as there was no other applicable retirement age. *See* MCC § 36-05-6-d-2 (indicating members with four years of service who then leave service are eligible to defer their retirement until the applicable retirement age); *see also* MCC § 36-03-5 (terminating membership upon receipt of benefits). Should they have remained separated from employment with the City without accepting additional employment, this age would have remained the applicable minimum service retirement age until they became eligible to retire and collect their retirement benefits under the deferred retirement option. *See* MCC § 36-05-6-d.

¶16 However, neither Miller nor Holley remained separated from service with the City and instead, both became general city employees when they accepted their subsequent employment with the MPS and the DPW. *See* MCC § 36-02-17 (defining a "general city employee" as "[a]n employee of the city or a city agency who is not a policeman or fireman"). As described in the deferred retirement section, re-employment with the City reactivated their once inactive status as members in the ERS, and as members whose inactive service as policemen had been turned into "active service" as general city employees, they were now provided with

8

the new minimum service retirement age of sixty. *See* MCC § 36-05-1-a; *see also* MCC § 36-05-6-d.

¶17     Further, as the deferred retirement section also clearly states, their "allowance" for their time spent as police officers was delayed until "subsequent retirement" from their re-employment with the MPS and the DPW. MCC § 36-05-6-d clearly splits the retirement benefits afforded to those who accept subsequent employment with the City prior to reaching the minimum service retirement age into two allowances—one for prior service and one for service upon re-employment. The receipt of both of these allowances are also clearly made available upon "subsequent retirement."

¶18     In this case, "subsequent retirement" from both Miller's and Holley's re-employment with the City does not occur until age sixty, which is the minimum service retirement age applicable to general city employees. Thus, both the allowances—one for their prior service as police officers and one for their service as general city employees—will become available at the time Miller and Holley subsequently reach age sixty. The deferred retirement section of the MCC does not create a staggered release of retirement benefits—one for prior service and one for new service—as Miller and Holley contend. Thus, the plain language indicates that there is one time for release of retirement benefits, not two as would be the case if the interpretation as argued by Miller and Holley applied.

¶19     Moreover, the interpretation advanced by Miller and Holley would create an internal inconsistency within Chapter 36. "Persons who are receiving a retirement allowance under any provision of this chapter" are not eligible to be members of the ERS. MCC § 36-03-6-g. Further, should a member become a beneficiary "he [or she] shall thereupon cease to be a member." MCC § 36-03-5.

9

If this court were to accept Miller and Holley's interpretation, the result would be that they could be both active members who are re-employed with the MPS and the DPW and also inactive members receiving benefits earned during a prior period of employment with the City. However, such a result is not allowed under the plain terms of Chapter 36 defining membership in the ERS. Thus, to interpret the deferred retirement section in its context and as part of the larger whole, *see Kalal*, 271 Wis. 2d 633, ¶46, we must conclude that Miller and Holley's re-employment with the City made them ineligible to also receive retirement benefits earned from their employment as police officers because their re-employment made them active members of the ERS and precluded them from simultaneously being beneficiaries.

¶20    In reaching its decision, the circuit court emphasized that both Miller and Holley left their re-employment with the MPS and the DPW before reaching age fifty-seven. Therefore, the circuit court reasoned that Miller and Holley could begin collecting retirement benefits related to their employment as police officers and then wait until reaching age sixty to begin collecting any benefits related to their employment as general city employees.

¶21    We are not persuaded that this fact changes the outcome. Despite the age at which Miller and Holley left employment with the MPS and the DPW, Miller and Holley still triggered the deferred retirement section applicable to those who are re-employed with the City. These provisions are clear that once re-employed with the City, there is one allowance upon subsequent retirement from the re-employment. The applicable retirement age to that re-employment is sixty years. Moreover, Miller and Holley still cannot be beneficiaries in receipt of their

retirement benefits as police officers and inactive members of the ERS awaiting any retirement benefits from their employment as general city employees.[5]

¶22    Miller and Holley further argue that they had a vested right to begin receiving retirement benefits earned as police officers at the age of fifty-seven. In making this argument, they contend that the minimum service retirement age is one of "the terms and conditions" referenced in MCC § 36-13-2 to which Miller and Holley were granted a vested right "at the date of the commencement of their membership." We are not persuaded that any such vested right in the minimum service retirement age exists. In fact, to conclude that Miller and Holley have a vested right in collecting retirement benefits at the age of fifty-seven would be to look only at the first "terms and conditions" set forth in MCC § 36-05-6-d-2 and ignore the remaining terms and conditions set forth in the deferred retirement section applicable to re-employment with the City. However, a proper interpretation requires analyzing all the terms and conditions in Chapter 36 and how they operate together.

¶23    Notably, this case concerns only the timing of when Miller and Holley can begin collecting any retirement benefits earned during their service as police officers. As the City points out, the amount of benefits is not at issue, and the City does not argue that Miller and Holley are entitled to a lesser amount or that the multiplier that applies to the credits earned for police service no longer applies. In fact, the City agrees with Miller and Holley that they have a right to have their benefits earned for their service as police officers calculated the same way and in

---

[5] There is no mention of any retirement benefits Miller and Holley earned in their re-employment with the MPS and the DPW, and we express no opinion about these benefits. However, any benefits Miller and Holley may have earned does not change the outcome of this case regarding the age at which they can begin collecting the benefits earned as police officers who are subsequently re-employed with the City.

the same amount from when they left the police force because the deferred retirement section provides that the allowance attributed to prior service be "computed on the formula in effect at the time he or she first left such service." *See* MCC § 36-05-6-d-2. Thus, this dispute focuses solely on when Miller and Holley can begin collecting their retirement benefits and has nothing to do with the amount to which Miller and Holley will eventually be entitled.

## CONCLUSION

¶24 In sum, Miller and Holley are not entitled to receive retirement benefits until age sixty as a result of their decision to return to employment with the City as general city employees. Thus, we agree with the City's position, and we consequently reverse the order of the circuit court granting summary judgment in favor of Miller and Holley and remand this matter for entry of summary judgment in favor of the City.

*By the Court.*—Order reversed and cause remanded.